## SPITLEY *v*. FROST and others.*

*(Circuit Court, D. Nebraska. February, 1883.)*

1. EQUITY—HOMESTEAD LAWS—WIFE'S INTEREST.

   Under the homestead laws of Nebraska enacted in 1866, the wife had no vested interest in the homestead, and was, therefore, not a necessary party to any judicial proceedings relating to it. The supreme court of Nebraska has held that the homestead law in force when a contract is made, is the one that shall govern in subsequent proceedings in reference thereto.

2. SAME—POWER OF THE COURT IN CASES AFFECTING HOMESTEADS.

   The court in which a case affecting the homestead is pending may exercise such power only as the parties before it might, in the absence of judicial proceedings, exercise over the subject-matter.

*Reversed. See 7 Sup. Ct. Rep. 1129.

3. SAME—RETROSPECTIVE LAWS.

    It is only where the intent of the legislature to make an act retrospective is plainly expressed, that courts will undertake to apply it to antecedent contracts, and determine whether it impairs their validity.

4. SAME—EXEMPTION LAWS—PERSONAL PRIVILEGES.

    The general doctrine is recognized that exemption laws are grants of personal privileges to debtors, which may be waived by contract or surrender, or by neglect to claim before sale.

5. RES ADJUDICATA—WHAT ORDERS ARE.

    There is a distinction to be noted between orders made upon motions respecting collateral questions arising in the course of a trial and final orders affecting substantial rights, and from which an appeal lies: the latter are *res adjudicata*, and binding upon the parties, unless reversed or modified by an appellate tribunal.

    In Equity. Upon rehearing.

    The controlling question in this case is whether the sale of the real estate in controversy, under the judgment of this court, in a case in which John I. Redick was plaintiff, and the respondent, George W. Frost, alone, was defendant, rendered in a suit in attachment, was a valid sale. The premises had been levied upon by writ of attachment at the commencement of the suit, and upon final hearing there was judgment, with an order for the sale of the attached property under a special execution. The contention of the respondents George W. Frost and wife, in the present case, is that the levy and sale were void, because the premises were their homestead, and therefore exempt from judicial sale under the laws of Nebraska. After the sale under the execution in the case of *Redick* v. *Frost*, a motion was made to confirm the same, which motion was opposed by Frost, on the ground, among others, that the premises constituted his homestead; but the sale was nevertheless confirmed. Subsequently the said George W. Frost moved the court to set aside the sale on several grounds, and among them upon the ground that the premises constituted his homestead, and were therefore exempt. Thereupon the court referred the case to a referee to take testimony upon the question of homestead; and testimony upon both sides was accordingly taken, and a report thereon was made, upon consideration of which, the court overruled the motion to set aside the sale.

    The controlling question in the present case is whether the judgment of the court confirming the sale, and overruling the motion to set the same aside, is a final adjudication of the homestead question by which the parties are bound, and which estops the present defendants to claim the property as a homestead.

McCRARY, J.  Upon the former hearing it was assumed that the question whether the premises in controversy were exempt as the homestead of respondents Frost and wife was a question arising under the provisions of an act of the legislature of Nebraska entitled "An act to exempt homesteads from judicial sale," approved February 19, 1877; and as that act vested the homestead right in the husband and wife jointly, and expressly provided that no conveyance or incumbrance of the homestead should be of any validity unless executed by both, it was held that the wife was a necessary party to any proceeding to subject property claimed as a homestead to judicial sale.   It resulted from this ruling that, in the judgment of the court, the respondents Frost and wife were entitled to a decree setting aside the sale under execution of the premises in question, notwithstanding the confirmation of that sale by this court in a proceeding in which the wife was not joined with the husband as a party.   If there was no error in assuming that the act of 1877 was the governing statute, I am of the opinion that the former ruling was entirely correct.   But it is now suggested that an earlier homestead act,—that of 1866,—being the act in force when the contract was entered into, is the governing statute, and that under that statute the wife had no vested interest in the homestead independently of her husband, and was therefore not a necessary party to any judicial proceeding relating to it.   Gen. St. 616.

It is true that the last-named act, which was the homestead law in force when the contract was made, only exempted the homestead owned "by the head of the family."   It did not provide, as the more recent act does, that the homestead of the *family*, whether owned by the husband or wife, should be exempt; nor did it contain the provision now found in most homestead laws, that no deed or mortgage of the homestead shall be of any validity unless executed by both husband and wife, if both are living.   Under this statute, had the wife an interest in the homestead which could not be divested in a proceeding against the husband alone, the title being in him?   Both upon authority and principle I am constrained to hold that where the wife has no power to prevent the voluntary alienation of the homestead by the husband, she is not a necessary party to a proceeding to subject it to judicial sale, or to determine whether a given piece of property is a homestead.   The cases cited in the former opinion, and other like cases, in which it is held that the wife is a necessary party to any judicial proceeding affecting the homestead, are all, it is believed, cases which arose under statutes conferring homestead rights

upon the wife, and placing those rights beyond the control of the husband. The statute now under consideration does not do this. It provides only for the exemption of a homestead to be selected by the owner "so long as the same shall be *owned* and occupied by the debtor as such homestead." The wife is not mentioned in the act; and however vital her interest in the home may be, we cannot hold that she has, in the absence of a statute to confer it, any legal interest in the property of the husband, such as to make her a necessary party to any proceeding touching the title or possession.

It has been repeatedly held by the supreme court of Nebraska that the wife had no control over the homestead, and no legal interest therein, under the statute in question. Thus, in *Rector* v. *Bottom,* 3 Neb. 171, it was held that the homestead right under that statute was a purely personal one, which the owner could at any time waive or renounce, and that it was lost by a failure of the owner at the time of a levy upon it to notify the officer of what he regards as his homestead. It was there held, also, that the exemption was a right guarantied to the head of the family, who was at perfect liberty to sell the homestead or pledge it for the payment of his debts if he chose to do so. "The legislature," says the court, by LAKE, C. J., "never intended to assume a guardianship over the owner of the homestead and render him disqualified to make valid contracts respecting it. It imposes no restraint upon him whatever in this respect; *even the wife, when the title is in the husband, has no power to prevent him from making such disposition of it as he may think best.*" The same language is repeated in *State Bank* v. *Carson,* 4 Neb. 501.

Accepting, as we are bound to do, this construction of the statute, we are unable to perceive any satisfactory ground for holding that a court of competent jurisdiction may not dispose of the question of homestead arising under it in any case where it properly arises, and to which the owner of the homestead is a party. It is only for the reason that the husband is, by law, deprived of the power to dispose of or incumber the homestead without the wife's concurrence, that it has been held under some statutes that the presence of both before a court is necessary to the jurisdiction of the court over the question of homestead rights.

The court in which a case affecting the homestead is pending may exercise such power only as the parties before it might, in the absence of judicial proceedings, exercise over the subject-matter. If the husband alone is in court, the power of the court is limited to his interest, and where this cannot be divested without the presence of

the wife the court is powerless. But where the entire control of the homestead is vested in the husband, the wife's presence as a party in court is not necessary.

It is insisted that the statute that we are considering does not govern the decision of this case. It is conceded that it was in force when the contract was entered into; but a later act (that of 1877) was enacted after the contract was made, and before the judgment was obtained or the sale made. This latter act, it is said, ought to be adopted as the law of this case, for the reason that it does not enlarge but diminish the amount of the homestead exemption. By the former act the value of the exempted property was left with no limit; by the latter, it is limited to $2,000. By the former, as we have seen, the exemption was for the benefit only of the head of the family, and the property was left under the entire control of the owner; by the latter, it is for the benefit of the family, and the wife is given a vested right in and control over the homestead. Counsel have discussed the question whether this last act can be applied to pre-existing debts without impairing the obligation of contracts. In one respect the homestead exemption is very much enlarged by the act of 1877, which extends the benefits of the exemption to the wife, and makes her consent necessary to its alienation; and there is force in the suggestion that to apply the latter act to the determination of this case, under the existing circumstances, would very seriously impair the rights of the complainant. This question does not, however, necessarily arise and it is not decided. The act of 1877 does not purport to be retroactive, and should, therefore, not be held to be so. It is only where the intent of the legislature to make an act retrospective is plainly expressed, that courts will undertake to apply it to antecedent contracts, and determine whether it impairs their validity. If, consistently with the terms of this act, it can be made to apply only to subsequent contracts, it should be so construed. Thomp. Homesteads & Exemptions, § 9. The supreme court of Nebraska has accordingly held that the homestead law in force when the contract was made is to govern. *Dorrington* v. *Meyers*, 9 N. W. Rep. 555. This rule is binding upon this court, and is, besides, in accordance with our view of the law.

We are brought to the conclusion that the act of 1866, which was in force when the contract was made, entered into and became a part of it, and must be looked to as determining the rights of the parties under it.

In this view of the case we are again to consider whether the homestead question was finally adjudicated and settled in the case of *Redick* v. *Frost*. And it is a wholly different question from the one considered and decided upon the former hearing, because it must now be discussed in view of the fact now ascertained that Frost, the husband and owner of the homestead, was the only necessary party to that proceeding. It is undoubtedly true that if the court had jurisdiction to pass upon the question of homestead, and did pass upon it by a final order, the judgment not having been appealed from is final. The statute of Nebraska provides that upon the return of any writ of execution upon which real estate has been sold, the court shall carefully examine the proceedings of the officer, and if satisfied that the sale has in all respects been made in conformity to the statute, shall direct the clerk to make an entry on the journal that the court is satisfied of the legality of the sale, and an order that the officer make to the purchaser a deed, etc. Gen. St. 1873, § 498. The general doctrine is recognized that exemption laws are grants of personal privileges to debtors which may be waived by contract or surrender, or by neglect to claim before sale, and it is probably true that where the homestead exemption is a personal privilege granted to the owner alone, as in this case, and the homestead is seized on attachment in a case in which the owner is a party, it is his duty to claim the exemption in the progress of the case, and before there is judgment, execution, and a sale. Thomp. Homesteads, etc., § 646. But, however this may be, it appears in this case that the respondent George W. Frost did not claim the exemption in opposition to the confirmation of the sale, and also as the basis of an application made by him to the court to set the sale aside. It would seem that it was necessary for the court to decide the question of exemption in order to determine the question presented by this application. If the property was exempt the sale was void, and should have been set aside. In order, therefore, to decide the question whether it should be set aside, it was necessary, the question being raised, to decide whether it was exempt. The practice in Nebraska seems to be to determine questions of this character upon the hearing of motions to confirm sales made by sheriffs under execution; and the rulings of the inferior courts of the state upon such questions have been regarded as final judgments, reviewable upon appeal or writ of error by the supreme court of the state. *Rector* v. *Bottom, supra; Banker* v. *Collins,* 4 Neb. 49; *Eaton* v. *Ryan,* 5 Neb. 47.

It being conceded that the owner of the property claimed as a homestead, and levied upon and sold under execution, may raise the question of exemption, upon a motion to set the sale aside, and that the court must decide it when so raised, and that its decision is a judgment, how can we escape the conclusion that it is, if not appealed from, final and conclusive? In the original opinion the question was suggested whether the homestead question can, in any case, be finally adjudicated upon a motion made to the court to confirm or set aside a sale on execution of the property claimed as a homestead; but the question was not then deemed material, and was, therefore, not considered. It now becomes material and must be disposed of. There are many cases in the books which hold, as a general rule, that orders and decisions of courts made in passing upon motions are not *res adjudicata*. But there is a distinction to be noted between orders made upon motions respecting collateral questions, arising in the course of the trial, and final orders affecting substantial rights, and from which an appeal or writ of error will lie. It is believed that the test is the one here suggested. If the order is one affecting substantial rights, is in its nature a final order, and one which may be reviewed upon appeal, it is an adjudication binding upon the parties, unless reversed or modified by an appellate tribunal. This is well illustrated by two New York cases. Before the adoption of the Code in that state it was held that an order made on motion in summary proceeding was not a final adjudication. *Simpson* v. *Hart*, 16 Johns. 63. After the adoption of the Code, providing for appeals from "final orders," it was held that an order made upon a motion to set aside executions issued upon certain judgments, and to have those judgments canceled, was a conclusive adjudication as between the parties. *Dwight* v. *St. John*, 25 N. Y. 203. In the latter case the court say that the defendant "was the moving party, and if he objected to the order granted in any respect, he should have appealed therefrom and have had it made correctly." And again: "Since, then, a full hearing, with the right of appeal, was open to the defendant on that motion, how is he to avoid the binding effect of that decision so far as it covers what was actually and necessarily tried?" etc. And see Freeman, Judgm. 585, 586.

That the order confirming the sale, and that overruling the motion to set the same aside, was reviewable, appears, not only from the course of practice in Nebraska, but from the terms of the statute.

By section 581 of the General Statutes it is provided that any order affecting a substantive right, made in a special proceeding or in a summary adjudication in an action after judgment, is a final order, which may be vacated, modified, or reversed by the supreme court. And section 582 of the same statutes provides that "a judgment rendered or final order made by the district court may be reversed, vacated, or modified by the supreme court for errors appearing upon the record." It is clear that the order in question was a final order, and that it affected substantial rights. It was, therefore, reviewable under either of said sections. Being a final order or judgment rendered by a federal court, it was in like manner reviewable by the supreme court of the United States. It was either a part of the main cause and could have been reviewed upon writ of error taking up the whole case, (*New Orleans* v. *Morgan*, 10 Wall. 256,) or it was a special proceeding under the statute, and therefore itself a suit and reviewable as such, (*Parker* v. *Overman*, 18 How. 137.) This latter was a statutory proceeding to confirm a judicial sale instituted by the publication of notice to all persons claiming an interest in the property sold to come in and assert their rights. The decision and order of confirmation in such a case was held to be a final judgment, binding both upon absent claimants and present contestants, and as such reviewable in the supreme court of the United States.

It is suggested by counsel that it does not appear from the record that the court decided the homestead question in passing upon the motion to confirm the sale, or upon the application to set the same aside. Assuming, without deciding, that it must appear from the record that the question was *necessarily* passed upon, and that it is not sufficient to show that it might have been decided, how does the case stand? The motion was to set aside the sale on several grounds, and among them upon the ground that the property was exempt as a homestead. The motion was overruled and the sale was confirmed. In order to reach this conclusion it was necessary for the court to decide the question of homestead adversely to the respondent Frost. If the sale had been set aside by the court without specifying upon which ground, it might have been contended that the decision of the court did not necessarily involve a determination of the question of exemption; but since the sale was confirmed, it must have been because in the judgment of the court none of the grounds urged against the validity of the sale were good. If the court had not decided this question of exemption against the right claimed, it could not have

confirmed the sale. The case comes, therefore, clearly within the doctrine of *res adjudicata.*

The question now before us arose in a former case between the same parties or their privies. It was properly presented to the court, testimony was taken, a hearing was had, and a final order was made.

The orders heretofore made respecting the issues upon the cross-bill of respondent Bryant are to stand without modification.

If respondents George W. and Abbie S. Frost desire an appeal, the same will be granted upon proof that the property is worth more than $5,000, and the bond for costs will be fixed at $500.