### THE TEXAS TRUNK RAILWAY COMPANY v. W. H. LEWIS, SHERIFF, ET AL.

#### No. 7260.

1. **Custodia Legis.**—Without holding that the dismissal of a suit wherein a receiver was appointed would subject to execution property taken charge of in such receivership but which had been seized under attachment pending the suit, it is held, where the court administering the property under a receivership had ordered a sale and had approved such sale before such dismissal, that the attachment proceedings would not affect such sale.

2. **Sale Under Receivership Proceedings.**—A sale under receivership proceedings in a court having jurisdiction will be presumed regular and to pass title to the property. As against the purchaser no one could complain unless he had a lien upon the property at the time of such sale.

3. **Priority in Time as Affecting Jurisdiction.**—There is a manifest propriety if not necessity for holding that the court which first acquires jurisdiction over a controversy should maintain it undisturbed by the interference of any other co-ordinate jurisdiction.

4. **The Appointment of Receiver Operates Upon the Property.**—After the appointment of a receiver the property to which the receivership relates is to be deemed in the custody of the law.

5. **Property in Control of Receiver not Subject to Attachment.**—The property on which the attachment was levied being then in the custody of the law by the appointment of a receiver (who had not given bond nor entered upon his duties), the levy conferred no right on the plaintiff in attachment or on those claiming under him.

6. **Suit Against Sold Out Railway Company.**—The statute contemplates that a suit pending against a railway corporation when its franchise and other property is sold may be continued against the directors or managers of the sold out company, and with a view to that end provides that upon such sale no suit shall abate but "shall be continued in the name of the trustees of the sold out company." Rev. Stats., arts. 4263, 4264.

7. **Injunction.**—The plaintiff in attachment has no rights under his foreclosure upon the property seized while in the custody of the law; and as a sale under such decree would be a cloud upon the title of the property the purchasers under the receivership proceedings were entitled to an injunction against such sale.

APPEAL from Dallas. Tried below before Hon. R. E. Burke.
The opinion states the case.

*Fitzhugh & Wozencraft* and *Bassett & Muse*, for appellant.—1. The court erred in dissolving the preliminary injunction heretofore as-

sented to in said cause and in rendering judgment in favor of said defendants.

(1) Because it was shown in the evidence that prior to the judgment recovered by John Wolston and Charles Vidor against the first Texas Trunk Railway Company said company had ceased to exist, because prior to that time said company's charter rights and corporate franchises and privileges had been sold out by and under a decree rendered in the Circuit Court of the United States for the Northern District of Texas at Dallas, and under said sale a new corporation had been organized by the purchasers of said corporate franchises and property.

(2) Because at the time the writ of attachment was levied on the Texas Trunk Railway in the suit of W. F. Thompson against the first Texas Trunk Railway Company, in which suit John Wolston and Charles Vidor recovered judgment against the said first Texas Trunk Railway Company, a receiver of said company had been appointed by the Kaufman District Court, whereby all of the property of the said first Texas Trunk Railway Company was in custodia legis, and that being so no writ of attachment could thereafter be levied upon said first company's property.

(3) Because the evidence showed that the plaintiff was entitled to and was the owner of the property levied on by virtue of the said writ of attachment which the defendants John Wolston and Charles Vidor claim by virtue of a mortgage or deed of trust given by said first formed Texas Trunk Railway Company on all of said property and franchises on the —— day of ——, 1880, and that said mortgage or deed of trust constituted the first lien on said properties, including said first company's franchises, rights, and corporate privileges, and railway; and that by reason of plaintiff becoming the purchaser of said company under a decree foreclosing said mortgage or deed of trust and sale thereunder, was the paramount owner and holder of said railway franchises and properties, and was also the owner of the same under the deed of the sheriff of Dallas County, as shown by the evidence, for which reason the judgment of the Dallas District Court should have been for the plaintiff.

(4) Because if the defendants John Wolston and Charles Vidor had any equity of redemption of said railway and corporate franchises, and had desired to enforce such equity of redemption, they should have tendered to the plaintiff the amount of the indebtedness of said first Texas Trunk Railway Company secured by said mortgage or deed of trust, and not have issued an execution for the sale of said railway and franchises prior to tendering to plaintiff said indebtedness.

2.    The levy of the writ of attachment under which the appellees claim being made after the appointment of the receiver by the District Court of Kaufman County, and while the property was in custodia legis, was in contempt of court and void, and the appellees acquired no rights

by virtue of the proceedings had under such levy. Drake on Att., secs. 267, 252; High on Receivers, secs. 134, 163, et seq.; Hagan v. Lucas, 10 Pet., 401; Buck v. Colbath, 3 Wall., 341; Peck v. Jenness, 7 How., 612; Pulliam v. Osborne, 17 How., 471; Taylor v. Carryl, 20 How., 587; The Slavers (Reindeer), 2 Wall., 401; Lewis v. Ship Orpheus, 11 Meyers' Fed. Dig., sec. 290.

3. The receiver's right and title related back to the time of his appointment, notwithstanding the fact that he had not as yet qualified at the moment of the levy of the attachment. High on Receivers, sec. 136; Rutler v. Tallis, 5 Sandf., 610; Steele v. Sturges, 5 Abb. Pr., 442.

4. The levy of the attachment being on grounds of public policy void when made, would not be validated by the subsequent abandonment of the proceedings in which the receiver had been appointed. High on Receivers, sec. 165; Lewis v. Ship Orpheus, 11 Meyers' Fed. Dig., sec. 290.

5. The mortgage or deed of trust under which the plaintiff claimed constituted the first lien on the property in controversy, and by virtue of the foreclosure and sale thereunder the plaintiff's vendors became the paramount owners of the property to which the plaintiff succeeded by its purchase from them.

6. The proceedings in the Federal court under which the plaintiff claims title being proceedings in rem, were binding on all the world, including the defendants, and the plaintiff became by virtue thereof the paramount owner of the property.

7. The judgment in favor of defendant against said company No. 1 was void, because at the date of its rendition said company had ceased to exist by reason of the fact that the company's charter rights and corporate franchises and privileges had been sold under the decree of the Circuit Court of the United States, and a new corporation had been organized in accordance with the laws by the purchasers of said franchise and property. Rev. Stats., art. 4259, et seq.; Mumma v. Potomac Co., 8 Pet., 281.

8. There will be no necessity for remanding the cause should the court concur with us in the legal propositions relied on. The judgment below was rendered upon an agreement as to the facts, and there being no further matter of fact to be ascertained and no damages to be assessed or other uncertainty as to the matter to be decreed, this court will render such judgment as the court below should have rendered.

The statute (Rev. Stats., art. 1048) requires this court upon the reversal of a judgment "to render such judgment as the court below should have rendered, except when it is necessary that some matter of fact be ascertained or the damages to be assessed or the matter to be decreed is uncertain, in either of which cases the cause shall be remanded for a new trial in the court below."

*Sawnie Robertson*, for appellees.—1. At the date of the judgment in favor of Wolston and Vidor the defendant corporation was not extinct.

2. The propriety of the levy of the attachment depends upon whether the suit in Kaufman was commenced first, and not upon whether an order was made in Kaufman appointing a receiver before or after the levy of the writ of attachment. High on Receivers, secs. 50, 51; Rorer's Interstate Law, p. 12; Wait's Insolvent Corp., sec. 261; Beach on Receivers, sec. 20; 2 Biss., 390; 6 Biss., 197, 286; Chittenden v. Brewster, 2 Wall., 191; Taylor v. Carryl, 20 How., 583; Foster's Fed. Prac., sec. 9; Wallace v. McConnell, 13 Pet., 136.

3. A levy of the writ of attachment after a receiver was appointed but before he qualified was not void. High on Receivers, secs. 136, 137; Gimbel v. Pitkin, 124 U. S., 143.

4. The Snow suit was never prosecuted to final judgment. It was removed to the Federal court and there finally dismissed; and the levy of said attachment, if suspended by proceedings had in said case, was by the dismissal of said suit revitalized. Gaylord v. Railway, 6 Biss., 286; Chittenden v. Brewster, 2 Wall., 191; Bell v. O. L. & T. Co., 1 Biss., 260; Taylor v. Carryl, 20 How., 583; Drake on Att., sec. 239; Wade on Att., sec. 31.

STAYTON, CHIEF JUSTICE.—On December 5, 1881, W. F. Thompson instituted an action against the Texas Trunk Railway Company in the District Court for Dallas County to recover a debt due him by the company, and to secure it he sued out and caused to be levied at 12 o'clock m. of same day a writ of attachment on the "road, roadbed, track, right of way, chartered rights, franchises, and privileges" of the company.

The claim of Thompson having been transferred to John Wolston and Charles Vidor, a judgment was rendered in their favor against the company on March 15, 1887, with foreclosure of attachment lien, under which an order of sale issued, and this the sheriff was proceeding to execute by a sale of the attached property when this suit was brought by the Texas Trunk Railway Company to enjoin the sale of the property in obedience to the suit.

On November 5, 1881, W. K. Snow and others brought a suit against the railway company in the District Court for Kaufman County to enforce claims for labor and material alleged to have been furnished by them, to secure which they asserted liens and sought the appointment of a receiver.

Before noon on December 5, 1881, the District Court for Kaufman County appointed Thomas M. Simpson receiver of the property of the company, but he had not qualified or taken possession of the property at the time the attachment sued out by Thompson was levied, though he subsequently did.

Some time during the year 1880 the railway company had borrowed money to construct its road and had issued bonds therefor, secured by mortgage on the property levied upon under the attachment sued out by Thompson, which were duly recorded in the counties of Dallas and Kaufman as early as June 2, 1880.

This mortgage seems to have covered all the property seized under attachment, and to have provided that in default of payment of interest as it fell due the right of the mortgagee to enforce it for the entire principal and interest due should exist, and the entire sum·secured by the. mortgage be deemed due.   Default was made on interest due May 1, 1882, and subsequently, and thereupon the mortgagee elected to declare the principal on the bonds to be due.   The mortgage for the benefit of the bondholders seems to have been made to the International Trust Company as trustee.

· At the June term of the District Court for Kaufman County for the year 1882 Charles Stepath and other holders of the bonds of the company sought to intervene in the suit filed in that court by Snow and others, but that court refused to permit this to be done, whereupon they filed in that court their petition in intervention as well as their petition and bond to remove the cause to the Circuit· Court of the United States for the Northern District of Texas, after which they filed in that court a transcript of the proceedings in the cause pending in the District Court for Kaufman County.

At the December term of the Circuit Court of the United States Snow and others moved that court to remand the cause to the State court, but the motion was overruled and the cause remained in that court until its January term, 1885, when it was dismissed at the cost of plaintiffs therein.

After that suit was removed to the Circuit Court of the United States the District Court for Kaufman County seems to have exercised jurisdiction therein, but what disposition, if any, that court ever made of the case does not appear, though the record before us tends to show that the demands of Snow and the other plaintiffs therein may have been settled in proceedings·in the Circuit Court of the United States now to be referred to.

On September 20, 1882, Charles Stepath and others holding bonds of the railway company, for themselves and all other bondholders, filed a bill in the Circuit Court of the United States, to which the case before referred to had been removed, praying the foreclosure of mortgage given to secure the bonds held by them, the appointing of a receiver, and the sale of the mortgaged property, and to this suit the International Trust Company, the trustee, made itself a party.

On January 5, 1883, the Circuit Court of the United States appointed a receiver, who took possession of the property and operated it until it was sold under a decree of that court entered on January 31, 1883,

foreclosing the mortgage to secure bondholders, but that decree required persons holding liens for labor to be notified to present their claims before the master for adjudication, with a view to their settlement out of the proceeds of sale.

The sale was made as directed by the court and a report thereof made, which was confirmed, but the decree of confirmation gave protection to claims of such lien holders as had not theretofore presented their claims and had them acted upon by the master; and under this the inference is that the claims of Snow and others who instituted the suit in Kaufman County were settled.

After the sale of the railway and other property covered by the mortgage the purchasers at that sale reorganized the company and incurred indebtedness to raise funds with which to complete such additional road as was necessary to preserve the charter, but failed to pay the money thus borrowed when it became due, and therefore judgment was obtained against the company, and the property was again sold to satisfy an execution issued on that judgment.

After that sale the purchasers thereat reorganized the company and were conducting its business, when the order of sale now sought to be enjoined was issued and placed in the hands of the sheriff, who was proceeding to execute it when this suit was brought to restrain him.

Neither Thompson nor Wolston and Vidor were made parties to the suit removed to the Circuit Court of the United States nor to the suit instituted in that court, and it is conceded that the sale appellees were about to have made in foreclosure of attachment lien adjudged to them would cloud the title of appellant if made.

It is conceded that the mortgage under which foreclosure was had in the Circuit Court of the United States was to secure legal demands, and that the lien thus given was prior to any that could have been obtained through levy of attachment in the action brought by Thompson; but in the view taken of the case it becomes unnecessary to inquire what would be the rights of the respective parties growing out of the fact that neither Thompson nor Wolston and Vidor were made parties to the suit in the Circuit Court of the United States.

In the disposition of the case it must be assumed that the Circuit Court of the United States had jurisdiction to render the judgment directing the foreclosure of the mortgage, sale of the property covered by it, and to confirm that sale; and it must further be assumed that the sale thus made passed title to the property as against the railway company, and freed it from the claims of all creditors of that company who did not hold valid liens at the time the suit was instituted under which the sale was made.

It is contended by appellant that at the time Thompson caused a writ of attachment to be levied the property was in custodia legis, and therefore the levy inoperative; while on the other hand it is contended that

the levy of the writ of attachment after the receiver was appointed but before he qualified was not void; and it seems to be contended that if the levy of the writ was inoperative when made, that it became operative when the suit instituted by Snow and others was dismissed in the Circuit Court of the United States.   These propositions will be considered in their inverse order.

After the suit instituted by Snow and others was removed to the Circuit Court of the United States it must be assumed that that court had jurisdiction of the cause and full control of the matter of receivership. It could discharge the receiver, appoint another, or discontinue the receivership, and we find that as early as January 5, 1883, that court appointed a receiver other than the one appointed by the District Court of Kaufman County, and, so far as the record shows, that receivership was continued until confirmation of the sale of the property, which was at some time in June, 1883, but the suit instituted by Snow and others was not finally disposed of until January, 1885.

If there could be a validation of a levy made on property while in custody of the law, by a subsequent dismissal of the suit through which that custody was invoked and granted, a proposition which we do not wish to be understood to assert, this would not under the facts sustain appellees' claim, for before the suit in which the receiver was originally appointed was dismissed the court had assumed the custody of the property, appointed another receiver, and had caused the property to be sold and had confirmed that sale.   The rights of purchasers at that sale had attached, and no lien could be made to attach to the property after their purchase which did not rest upon it at the time the suit was instituted under which they bought.

The other propositions involve the inquiries, when came the property into the custody of the law in the suit in which receivership was sought and granted, and what was the effect of that custody upon the right of a creditor of the railway company to cause it to be seized under a writ of attachment?

Cases may be found in which the proposition has been asserted that the court in which a bill is filed stating sufficient grounds for and asking the appointment of a receiver thereby acquires jurisdiction not only of the controversy but also of the property over which the receivership is asked that will exclude the jurisdiction of all other courts of co-ordinate jurisdiction.   Trust Co. v. Railway, 6 Biss., 198; Gaylord v. Railway, 6 Biss., 286.   In these cases it was held that possession of the property was not essential to the right of the court to control it, and that the possession of a receiver appointed by another court prior to the appointment of a receiver by the court in which suit was first filed must give up the possession.

These cases go far toward holding that property over which a receivership is sought is in custody of the law from the time a bill, even de-

fective, is filed presenting a controversy over which the court has jurisdiction and asking the court to assume custody of the property. There is a manifest propriety, if not necessity, for holding that the court which first acquires jurisdiction over a controversy should maintain it undisturbed by the interference of any other court of co-ordinate jurisdiction, and there is much force in the proposition that its jurisdiction over the res to which the controversy relates should not be interfered with in any case in which the custody of the thing is necessary to the full adjustment of the rights of the parties to the controversy; but in this case we are not called upon to decide whether in any case property can be said to be in custody of the law until the court in which the controversy is pending has in some manner not only adjudged that a case is presented in which a receiver may be appointed, but has adjudged that one is or will be appointed, or until custody has been actually taken.

Upon these questions there is some conflict of authority. In the case before us it appears not only that the suit in Kaufman County was instituted before the attachment sued out by Thompson was levied, but that the court had appointed a receiver before that was done, who, however, did not qualify until after the levy was made.

We understand the courts to hold, almost without dissent, that after the appointment of a receiver the property to which the receivership relates is to be deemed in the custody of the law, and this seems to us the correct rule. Storm v. Waddell, 2 Sand. Ch., 505; Van Alstyne v. Cook, 25 N. Y., 496; Skinner v. Maxwell, 68 N. C., 400; Rutter v. Tallis, 5 Sand., 610; Maynard v. Bond, 67 Mo., 315. In the case last cited the court, adopting the language of Stelle v. Sturges (5 Ab. Pr. R., 442), said: "The counsel for the sheriff only objects that he was prior in right to the receiver, because his levy was made before the receiver had executed and filed the bond to be given by him. When the court in such cases appoints a receiver it is because the court has first adjudged that the property is no longer to be under the control of the parties to the suit, but is thenceforth to be and is in the custody of the court. The receiver then becomes merely an agent through whom the court acts, and whether he be forthwith appointed by the court as in this case, or a reference be made to a master or referee to appoint one, in either case the effect is the same; the title of the receiver is of the date at which it is ordered that a receiver be appointed. Then the title of the parties to control dies, and then the title of the court and of its agent and officer immediately succeeds. * * * The order of the court either impliedly or expressly takes the title from the parties and rests it in the receiver from that moment. It is enough, however, if it took it from the parties; after that no execution against them could be levied upon it." Some of the expressions here used may not be strictly accurate, but the general rule announced is believed to be correct.

Many other cases to the same effect are cited by elementary writers (Beach on Receivers, 200, 201), and any other rule would in effect be a holding that the existence of a qualified agent was necessary to legal custody of the law or court.

The property on which the attachment was levied being then in the custody of the law, the levy conferred no right on Thompson or those claiming under him.    Wisnall v. Sampson, 14 How., 52; Edwards v. Norton, 55 Texas, 410; Hackley's Executors v. Swigert, 5 B. Monroe, 86; Robinson v. Railway, 66 Pa. St., 160; Freem. on Ex., 129; Drake on Att., 251.

The judgment on which appellees rely was rendered against the Texas Trunk Railway Company after the sale made under decree of the Circuit Court of the United States, and the suit instituted by Thompson seems to have been prosecuted to final judgment against the company as it existed when that suit was first instituted.    The statute contemplates that a suit pending against a railway corporation when its franchise and other property is sold may be continued against the directors or managers of the sold out company, and with a view to that end provides that "no suit pending for or against any railway company at the time that the sale may be made of its roadbed, track, franchise, and chartered privileges shall abate, but the same shall be continued in the name of the trustees of the sold out company."    Rev. Stats., arts. 4264, 4263.

It is insisted that the judgment rendered in favor of appellees was void, because rendered against a corporation that had ceased to exist, when to give it any validity it should have been prosecuted to final judgment against the trustees of the sold out company; but in view of the other questions already considered, which we deem conclusive of the rights of the parties, it is not necessary to decide the questions thus presented.

We think it evident that appellees have no right to have the property sold under the decree foreclosing the attachment lien which Thompson sought to acquire while the property was in custody of the law; and as it is conceded that such a sale would cloud appellant's title, the judgment of the court below will be reversed and judgment here rendered enjoining the sale of the property described in plaintiff's petition under any process issued or to be issued on the judgment rendered in favor of Wolston and Vidor against the Texas Trunk Railway Company by the District Court for Dallas County on March 15, 1887, same described in plaintiff's petition.

It is so ordered.

*Reversed and rendered.*

Delivered May 5, 1891.

Justice HENRY not sitting.