GUARANTY STATE BANK & TRUST CO. v. THOMPSON et al. (No. 1186.)

(Court of Civil Appeals of Texas. Amarillo. May 30, 1917.)

1. CORPORATIONS ☞559(5)—INSOLVENCY AND RECEIVERS — PREFERENCES TO CREDITORS — TRUST FUND DOCTRINE.

Under Rev. St. 1911, art. 2128, § 3, providing for the appointment of receivers for insolvent corporations, held that, after the appointment of a receiver for an insolvent corporation in a proceeding which contemplates the administration and sale of the property for the benefit of those interested therein, no one will be permitted to acquire a lien thereon by attachment, judgment, or otherwise.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2248, 2259.]

2. CORPORATIONS ☞556 — INSOLVENCY AND RECEIVERS—NECESSARY PARTIES — GENERAL CREDITORS.

While the receiver of an insolvent corporation appointed under Rev. St. 1911, art. 2128, § 3, takes only such interest as the owner had at the time the court took jurisdiction, and valid existing liens cannot be affected unless the lienholder is made a party to the suit, it is not necessary to make general creditors parties; as

they are bound to take notice of the proceeding from the general notice to creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2219, 2226.]

3. CORPORATIONS ☞560(5)—INSOLVENCY AND RECEIVERS—JURISDICTION.

Where a court had jurisdiction to appoint a receiver and administer the property of an insolvent corporation, it could convey such title as the corporation had at the time it took possession thereof.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2254, 2262.]

4. RECEIVERS ☞140—SALE UNDER ORDER OF COURT—COLLATERAL ATTACK.

Where a court had jurisdiction to appoint a receiver and administer the property of an insolvent corporation, a creditor having no interest in the property at that time could not subsequently acquire a lien and question, in a collateral proceeding, the power of the court to sell the property.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 246.]

5. APPEARANCE ☞8(4)—MOTIONS—RECEIVERSHIP.

In a proceeding for the appointment of a receiver and the administration of the property of an insolvent corporation, a creditor by a motion to vacate the receivership and dismiss that part of the proceeding thereby became a party to the suit.

[Ed. Note.—For other cases, see Appearance, Cent. Dig. §§ 31–33.]

6. RECEIVERS ☞140—SALE—COLLATERAL ATTACK—CLAIM IN JUDICIAL PROCEEDING.

Where a party to the suit invoked a decision of the question of the insolvency of the corporation and the right of the court to administer its assets as a trust fund in that proceeding, and had a trial on the issue upon full introduction of the evidence, it is estopped, in a collateral proceeding, to question the right of the court to proceed with the sale of the property on such theory.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 246.]

7. RECEIVERS ☞140 — CORPORATIONS — MOTION TO VACATE RECEIVERSHIP—COLLATERAL ATTACK ON SALE.

A motion to vacate the receivership which also raised the issue of the insolvency of the corporation and the right of the court to administer its assets as a trust fund was in effect an intervention, and did not raise a collateral issue.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 246.]

8. EXECUTION ☞172(3) — INJUNCTION—SUBJECT OF RELIEF—CLOUD ON TITLE OF REAL ESTATE.

Rev. St. 1911, art. 4643, § 3, provides that district and county courts may grant injunction, where a cloud would be put on the title of real estate being sold under an execution against a person, partnership, or corporation having no interest in such real estate, or where irreparable injury is threatened irrespective of any remedy at law. Held, that the purchaser of property at a sale by the receiver of an insolvent corporation under order of the court may enjoin the sale of the property under execution in a subsequent suit against the corporation, although the facts showing the superiority of plaintiff's title were a matter of record.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 522, 523.]

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Suit for injunction by D. H. Thompson and another against the Guaranty State Bank & Trust Company and another to enjoin the sale of property under execution. Judgment for plaintiffs, and named defendant appeals. Affirmed.

Leake & Henry, of Dallas, for appellant. Supple & Harding, of Waxahachie, and Lively & Goggans, of Dallas, for appellees.

BOYCE, J. On April 17, 1912, the judge of the Sixty-Eighth judicial district of Dallas county, in cause No. 11188c, D. H. Thompson v. Model Brick Company, appointed a receiver for the property of the defendant corporation, on allegations made by the plaintiff in said suit, who had sued on an indebtedness alleged to be due him by said corporation, that said corporation was insolvent and was a non-going concern, and its properties about to be sold under executions on judgments against said corporation obtained by other creditors. The receiver qualified on April 19, 1912, and a general order of allowance to creditors to intervene in said suit was entered on May 7, 1912. Numerous creditors did intervene, and their claims, as well as the claim of the plaintiff in said suit, were established by judgment of the court. All of the property of the corporation was sold under order of the court entered February 7, 1913, directing the receiver to sell the same free of all liens and incumbrances with a provision in the order that the claims of all persons and creditors against said property should attach to and be established against the fund arising from said sale in lieu of said property. The sale was made at public auction on March 4, 1913. The appellees, D. H. Thompson and J. F. Dunaway, purchased the property at this sale, which was subsequently confirmed by the court, and receiver's deed was executed conveying the same. The proceeds of the sale, after paying costs of receivership, taxes, and a prior vendor's lien on certain of the property of the corporation, were distributed among the intervening creditors who had established their claims, and the receivership was closed and the receiver finally discharged by order of the court entered April 27, 1914.

The appellant, the Guaranty State Bank & Trust Company, on the same day of the appointment of the receiver above mentioned, obtained a judgment for $2,334.30 against the Model Brick Company, and on May 22, 1912, had an abstract of said judgment recorded in Dallas county, in which county the real property of said defendant was situated. On October 28, 1912, said bank filed a motion in said receivership case to vacate the receivership, setting up the existence of its judgment and the record of abstract thereof, and alleging that said corporation was not in fact insolvent and had not ceased to do business when the receiver was appointed, but that the receiver was appointed through fraud and collusion between the plaintiff and the said Company, without notice to any of the creditors of the corporation, the corporation itself appearing without service of notice and confessing the allegations of plaintiff's petition. The plaintiff in the receivership suit, as well as several of the intervening creditors, contested this motion. A hearing was had and the motion was overruled. At the request of said bank the court filed conclusions of fact and law finding that said corporation was insolvent at the time of the appointment of a receiver therefor; that it had not been doing business for several months prior to such time, and, on account of its financial condition, had no expectation of being able to resume business; and concluding as a matter of law that the receiver was properly appointed for the purpose of conserving the assets of the corporation and distributing the same among its creditors. The bank gave notice of appeal from said order, but never perfected the same. Said bank, except by such proceeding, never otherwise appeared in said suit, did not have its claim established therein, and did not participate in the distribution of the funds realized from the sale of its assets. It was not made otherwise a party to the suit, though the receiver gave it written notice of the order of the court allowing creditors to intervene and of the various proceedings in the receivership case in which the creditors might be interested. The said bank, on November 25, 1913, caused an execution issued on its judgment against the Model Brick Company to be levied on a part of the real estate purchased by the appellees at the receiver's sale, and was proceeding to have the same advertised and sold under said execution as the property of the Model Brick Company.

This present suit was filed by the appellees, Thompson & Dunaway, against appellant bank and the sheriff levying said execution to enjoin the sale of said property under said process. All of the foregoing facts were substantially set up in plaintiffs' petition and established upon the trial of said injunction suit before the court, whereupon the court below entered judgment perpetually enjoining the sale of said property under said execution and any further sale by virtue of said judgment and canceling any apparent lien created· against the property purchased by appellees at the receiver's sale by reason of the record of the abstract of appellant's judgment against the model Brick Company. This appeal is from this judgment of the court.

Appellant presents numerous assignments of error, but they may all be disposed of in the consideration of two general questions, to wit: (1) The effect of the receivership proceedings and the sale on the lien which appellant would have acquired by the abstract of its judgment but for such proceedings; (2) whether the claim asserted by appellant and any sale thereunder would cast a cloud on

appéllees' title so as to authorize a court of equity to interfere by injunction.

[1] The assets of an insolvent corporation which has ceased to do business are a trust fund for the payment of its debts pro rata, and when the trust character attached to the property a creditor may not secure a preference lien (Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., 86 Tex. 143, 24 S. W. 16, 22 L. R. A. 802; Orr Lindsley Shoe Co. v. Thompson, 89 Tex. 501, 35 S. W. 473), and article 2128, § 3, of the Revised Statutes provides for the appointment of a receiver where a corporation is in such condition. The acquisition of liens subsequent to the possession of the property by the receiver would be inconsistent with' the trust fund theory of the property of the insolvent corporation and the object and purpose of the receivership proceeding. So it is generally held that, after the appointment of the receiver in a proceeding which contemplates the administration and sale of the property for the benefit of those interested therein, no one will be permitted to acquire a lien thereon by attachment, judgment, or otherwise. Texas Trunk Ry. Co. v. Lewis, 81 Tex. 1, 16 S. W. 647, 26 Am. St. Rep. 776; Reisner v. G., C. & S. F. Ry. Co., 89 Tex. 656, 36 S. W. 53, 33 L. R. A. 171, 59 Am. St. Rep. 84; Ellis v. Vernon Ice, Light & Water Co., 86 Tex. 109, 23 S. W. 858; Cowan v. Pennsylvania Plate Glass Co., 184 Pa. 1, 38 Atl. 1079; Fidelity Insurance, Trust & S. D. Co. v. Roanoke Iron Co. (C. C.) 81 Fed. 448; Temple v. Glasgow, 80 Fed. 447, 25 C. C. A. 540; Clyde v. Richmond Ry. Co. (C. C.) 56 Fed. 539; Atty. Gen. v. Atlantic Mutual Insurance Co., 100 N. Y. 279, 3 N. E. 193; Watkins v. Minnesota Threshing Machine Co., 41 Minn. 150, 42 N. W. 862; Cyc. vol. 34, pp. 200, 202, 231; High on Receivers, §§ 138, 349; Gluck & Becker, ·Receivers of Corporations (2d Ed.) pp. 23, 167.

[2] The receiver, it is true, takes only such interest as the owner had at the time the court took jurisdiction of the property, and valid liens that have already been acquired cannot be affected unless the lienholder is made a party to the suit, but it is not necessary to make general creditors parties, as they are bound to take notice of the proceeding from the general notice to creditors; and where the court had jurisdiction its power to make sale of the property in its possession cannot be collaterally attacked. Hutchinson v. I. & G. N. Ry. Co., 111 S. W. 1101; New Britain Machine Co. v. Watt, 180 S. W. 624; State ex rel. Connors v. Shelton, 238 Mo. 281, 142 S. W. 417; American Bonding Co. v. Williams, 62 Tex. Civ. App. 319, 131 S. W. 652; High on Receivers, § 39, a to c; Cyc. vol. 34, p. 164. The decisions of our courts, with possibly the exception of the case of Central Coal & Coke Co. v. Southern National Bank of New York, 12 Tex. Civ. App. 334, 34 S. W. 383, are in harmony with these general principles, and the conclusions to which they lead. In the case of Texas Trunk Ry. Co. v.

Lewis, 81 Tex. 1, 16 S. W. 647, 26 Am. St. Rep. 776, a creditor levied an attachment on property on the same day that a receiver was appointed for the corporation owning it, but before he qualified. The attaching creditor was not a party to the receivership proceeding, and after the sale of such property by the receiver under order of the court administering the receivership such creditor secured a judgment of foreclosure of his attachment lien and was proceeding to have the property sold under an order of sale, and the Supreme Court held that he acquired no lien by the attachment, and that the sale should be enjoined. The court, in the course of the opinion, quotes the following with approval from a New York case (Steele v. Sturges, 5 Abb. Prac. 442):

"The title of the receiver is of the date at which it is ordered that a receiver be appointed. Then the title of the parties to control dies, and then the title of the court and of its agent and officer immediately succeeds. * * * The order of the court either impliedly or expressly takes the title from the parties and vests it in the receiver from that moment. It is enough, however, if it took it from the parties; after that no execution against them could be levied upon it."

In the case of Central Coal & Coke Co. v. Southern National Bank of New York, 12 Tex. Civ. App. 334, 34 S. W. 383, above referred to, an abstract of judgment was recorded after the appointment of a receiver for the corporation owning the property; the property was sold in the receivership proceeding, and suit was brought by a purchaser at the receiver's sale to restrain the sale of the property on execution issued out of the judgment which had been abstracted as above stated, and the court held that the rights of the creditors were not affected by the receivership proceeding because he was not a party to such proceeding, and it was not alleged that it was necessary for him to intervene therein. The opinion does not disclose the grounds on which the receiver was appointed, though it does appear that a general order was entered in the case requiring all creditors to intervene within 60 days. The court, in support of its conclusion as announced, cites the case of Railway Co. v. Johnson, 76 Tex. 421, 13 S. W. 463, 18 Am. St. Rep. 60; Id., 151 U. S. 81, 14 Sup. Ct. 250; 38 L. Ed. 81. We do not think, however, that such case supports such conclusion. In the said case of Railway Co. v. Johnson, upon the close of the receivership for the Texas & Pacific Railway Company pending in the Circuit Court of the United States in Louisiana, the property was ordered delivered back to the railway company, free of claims not established by intervention in the receivership case within a limited period of time thereafter. Johnson at the time had a suit for damages for personal injuries pending in Texas against the receiver, and upon his discharge made the railway company a party defendant, and it sought to escape

liability by reason of the order above mentioned. It was shown that during the receivership the earnings of the road had been invested in betterments of value in excess of plaintiff's claim. The holding in the case was that the Circuit Court could not thus deprive Johnson of the lien on the earnings which the law gave him to secure payment of the judgment he might obtain for his damages, and could not place the limitation made upon the time within which he might establish his claim by intervention. The difference between such case and the case before the court in Central Coal & Coke Co. v. Southern National Bank of New York and in this case is suggested by the Supreme Court of the United States in its review of the Johnson Case by this statement:

"The general equity jurisdiction of the Circuit Court no doubt embraced the authority to hold possession of the property and to determine the rights of all persons who were parties, or who made themselves parties to the proceedings before it; and if the property sequestrated had gone to sale and a fund been realized for distribution, then, upon notice appropriate to proceedings in rem, the defendant in error might have been bound by the disposition thereupon made. * * * The order was not a decree in rem condemning the particular thing seized, but an order providing for the resumption of possession thereafter. * * * The case was not one of a fund in court, and the authorities upon the question of limitation of time for the presentation of claims to share in the distribution of such a fund are not in point."

Besides, the lien in that case was one created by law, and was rightfully acquired during the receivership resulting from the receiver's administration of the property.

[3, 4] We are of the opinion that, as the court had jurisdiction to appoint the receiver and administer the property of the insolvent corporation, it could sell such title as the corporation had at the time it took possession thereof, and that the appellant, having no interest in the property at such time, could not subsequently acquire a lien and question in a collateral proceeding the power of the court to sell said property, and that the lien attempted to be acquired in contravention of the receivership proceeding and the theory on which the court was administering the property is without effect.

[5, 6] It is not necessary, however, for us to rest our decision on this conclusion, for we are of the opinion that the appellant bank appeared in the receivership case by its motion to vacate the receivership and dismiss that part of the proceeding, and thereby became a party to the suit; and, having invoked a decision of the question of the insolvency of the corporation and the right of the court to administer its assets as a trust fund in that proceeding, and having had a trial of that issue upon full introduction of the evidence, is now, in this collateral proceeding, estopped from questioning the right of the court to proceed to the sale of said property on such theory. Black on Judgments, 576, 691; 23 Cyc. 1120; 34 Cyc. 161; Buckles v. C., M. & St. P. Ry. Co. (C. C.) 53 Fed. 567; Spitley v. Frost (C. C.) 15 Fed. 305; Freeman on Judgments, § 325; Second Nat. Bank v. Haerling, 106 Iowa, 505, 76 N. W. 826; Wilson v. McIntosh, 30 Kan. 234, 1 Pac. 572.

[7] The motion of appellant in the receivership case was, in effect, an intervention; it was not a collateral issue, but struck at the foundation of that proceeding in its challenge of the right of the court to proceed with the administration of the property in its hands.

[8] With respect to the second question suggested by us, appellant contends that, since appellee's title comes through the receiver's sale, and the validity of any claim asserted by appellant is dependent on the effect thereon of the proceedings in the receivership case, and such proceedings are a matter of record, the claim thus asserted by appellant and any sale thereunder would not put a cloud on appellee's title within the meaning of that term as settled by the decision of our courts prior to the adoption of our present statute on injunction. Section 3 of article 4643 provides that the judges of the district and county courts may grant writs of injunction:

"(3) In all cases where the applicant for such writ may show himself entitled thereto under the principles of equity, and as provided by statutes in all other acts of this state, providing for the granting of injunctions, *or where a cloud would be put on the title of real estate being sold under an execution against a person, partnership or corporation, having no interest in such real estate subject to the execution at the time of the sale, or irreparable injury to real estate or personal property is threatened, irrespective of any legal remedy at law.*"

That part of the provision which we have italicized was added to the statute by the act of the Legislature of 1909. Section 6 of said act of 1909, which adopted this amendment, declared an emergency for the following reasons:

"The fact that there is now no well defined and settled statutes on law and equity to properly prevent a cloud on title of real estate and all other property exempt from forced sale, under and by virtue of the exemption laws of this state, being sold under an execution against a person, partnership, or corporation, having no interest in such real estate, or all other property so exempt at the time of the sales without resorting to the legal remedy at law, creates an emergency," etc. Gammel's Laws, vol. 14, p. 356.

Prior to this enactment of 1909 it had been held that a sale of real estate under execution, issued against a third person, might not be enjoined by the owner of the property ,when the evidence of the superiority of his title was a matter of record. It is to be noted, however, that the holding of the earlier and leading cases in which the rule was adopted is put on the ground that no irreparable injury is threatened in such cases, and the party had an adequate remedy at law in an action of trespass to try title and it was not held that the threatened sale would not cast a cloud on the title. Carlin

v. Hudson, 12 Tex. 203, 62 Am. Dec. 521; Mann v. Wallis, 75 Tex. 611, 12 S. W. 1124. But it was further held that, where the evidence that would defeat the apparent claim being sold through the execution sale ,was not a matter of record, an injunction would lie for the reason that an innocent purchaser might thus acquire title and irreparable injury result. In applying these holdings from time to time some of the courts have said that a threatened sale would not put a cloud on the title where the facts showing the superiority of the plaintiff's title were of record. Spencer v. Rosenthall, 58 Tex. 4, a decision by the Commission of Appeals; Purinton v. Davis, 66 Tex. 456, 1 S. W. 343; Cook v. T. & P. Ry. Co., 3 Tex. Civ. App. 145, 22 S. W. 58; Carver v. First National Bank, 18 Tex. Civ. App. 425, 45 S. W. 475; Heath v. First National Bank, 32 S. W. 778. The cases of Carlin v. Hudson, 12 Tex. 203, 62 Am. Dec. 521, the first decision on the question, and Mann v. Wallis, 75 Tex. 611, 12 S. W. 1123, are the leading cases, and in both of these the injunction was denied on the ground that the petition in the case did not show that plaintiff would suffer irreparable injury, but did show that in the event of the threatened sale plaintiff's right might be fully protected by the legal remedy of trespass to try title; and in the case of Mann v. Wallis, an opinion by Judge Stayton, following this holding and the discussion of a cited case, it is added:

"The decision in that case is in line with all the decisions which hold that injunction will issue to prevent cloud upon title, when the evidence on which the right depends is not of record, or shown in the papers through which the right depends."

It will be seen that this case does not hold that a cloud on the title will not result from the sale, but simply that equity will not interfere in such cases because the party has an adequate legal remedy. That Judge Stayton did not hold that such a sale would not cloud the title is evident from the reading of an opinion ,written by him in the case of Day Land & Cattle Co. v. State, 68 Tex. 526, 4 S. W. 865, from which we quote the following:

"It is also urged that, if the patents are void, there is no necessity for relief, and that, as a court will not do a useless thing, therefore it will not cancel the patents. As said by a distinguished author, this rule 'leads to the strange scene, almost daily, in the courts, of defendants urging that the instruments under which they claim are void, and therefore that they ought to be permitted to stand unmolested, and of judges deciding that the court cannot interfere because the deed or other instrument is void; while, from a business point of view, every intelligent person knows that the instrument is a serious injury to the plaintiff's title, greatly depreciating its market value, and the judge himself, who repeats the rule, would neither buy the property while thus affected nor loan a dollar upon its security. This doctrine is, in truth, based upon mere verbal logic, rather than upon considerations of justice or expediency.' 3 Pom. Eq. 1399. * * * We are of the opinion that the better rule is that, notwithstanding an in-

strument may be void upon its face, a court has power, which it must exercise, not only to declare the instrument void, but to cancel it, when a defendant asserts claim under it. A defendant who asserts claim, even under an instrument void on its face, cannot be heard to say that it has not such semblance of validity as to create a cloud upon the title to property which it professes to convey that will prejudice the right of the real owner if it be not removed. He cannot be heard to say that others will not attach to it the same degree of faith and credit, as a title-bearing instrument, which he in good faith gives to it; and that, to the extent of the doubt or cloud thus cast upon the real title, its holder is injured, or is likely to be injured."

This case was followed by the case of Morton v. Morris, 27 Tex. Civ. App. 262, 66 S. W. 94. See, also, Paddock v. Jackson, 16 Tex. Civ. App. 655, 41 S. W. 700.

The holding that equity would not enjoin such sales except in cases where extrinsic evidence was necessary to show the superiority of the plaintiff's title was criticized and deplored by the Court of Civil Appeals for the Third District, in an opinion written by Judge Fisher, in Chamberlain v. Baker, 28 Tex Civ. App. 499, 67 S. W. 532. This, then, was the condition of the Law ,when the Legislature passed the act of 1909, and we do not think that it can be doubted that the Legislature intended by the act to allow the courts to afford the relief that was theretofore denied in such cases. If we were to adopt appellant's view of the law and hold that the Legislature contemplated that a cloud would only be put upon a title in those cases where the evidence of the superiority of plaintiff's right was not of record, then the Act of the Legislature becomes a vain and useless thing, because the courts already afforded relief by injunction in such cases. We think the statute is clearly applicable to the character of case presented by this record.

These holdings dispose of all of the assignments presented by the appellant, and the judgment will be affirmed.