SLIGH et al. v. STANLEY et al. (No. 8844.)

(Court of Civil Appeals of Texas. Ft. Worth. April 6, 1918. Rehearing Denied May 11, 1918.)

1. RECEIVERS &#9758;71—RIGHTS—PROPERTY.

A receiver appointed in partition proceedings becomes invested with the full right to the possession and control of the property.

2. BROKERS &#9758;54—COMPENSATION—ABILITY AND WILLINGNESS OF PROCURED PURCHASER.

A real estate broker is not entitled to commissions until he has procured purchaser ready, able, and willing to purchase upon the terms given by the owner of the land.

3. RECEIVERS &#9758;135 — RIGHTS OF OWNERS — SALE OF LAND—TERMS.

Where a receiver is appointed to take possession of and sell certain real estate, the owners of the property have no rights to fix the terms upon which the land is to be sold.

4. BROKERS &#9758;58—COMMISSIONS—AUTHORITY —RECEIVERS.

Broker cannot recover on contract with owners of property, whereby he was to produce buyer at stipulated price, where he knew that a receiver had been appointed to sell the land at the time broker's contract had been entered into; such appointment having terminated owner's right to stipulate terms of sale.

Appeal from Johnson County Court; B. Jay Jackson, Judge.

Action by E. N. Stanley and others against J. M. Sligh and others. Judgment for plaintiffs, and defendants appeal. Reversed and remanded.

Walker & Baker, of Cleburne, for appellants. Moore & Myres, of Cleburne, for appellees.

CONNER, C. J. This appeal is from a judgment in appellees' favor for $485.85. The recovery was for commissions alleged to be due appellees for effecting a sale of land in which appellants had a joint interest.

Omitting the description of the land in question and other averments not deemed necessary to state, the following quotation from appellees' amended original petition will sufficiently show the basis of their suit:

"That on or about October 30, 1916, the defendants J. M. Sly, Martha Sly, and William Maxwell were owners of said land and were anxious and desirous to make sale of same, and prior to said date had had said land upon the market and listed with plaintiffs to make sale for them; and, on said last-mentioned date, the said J. M. Sly, acting for himself and his codefendants, Martha Sly and William Maxwell, made and entered into an agreement or contract with plaintiffs, by which plaintiffs' right and authority to make sale of such land was renewed and confirmed; and the said J. M. Sly, acting for himself and his codefendants, the said Martha Sly and William Maxwell, agreed and contracted with the plaintiffs that, if they would make sale of such land at and for the sum of $40 per acre cash, the said defendants would pay to plaintiffs the usual and customary commission of 5 per cent. upon the proceeds of such sale, at and for the sum of $40 per acre cash."

It was further alleged that, "in pursuance of said agreement and contract," the plaintiffs undertook to find a purchaser and within a short time did find one for the sum of $40 per acre in cash, "and upon the terms and conditions prescribed by defendants for the sale of such land." It was further alleged that the name of, the purchaser, one R. C. Boyd, was reported to the defendants; that Boyd was willing, ready, and able to buy said land upon the terms provided; and that the defendants agreed to sell to the said Boyd upon the terms stipulated and provided for by them; but that for some reason unknown to the plaintiffs the defendants declined to close the deal, but "did make and enter into another agreement with said R. C. Boyd by which the said R. C. Boyd agreed to and did give to the defendants the sum of $41 per acre for such land." The prayer was for 5 per cent. commissions on the total amount of the sale at $41 per acre ($9,717), amounting to the said sum of $485.85, for which they sued and recovered judgment.

We have concluded that the evidence will not support the judgment. It is true there was evidence in behalf of appellees substantially supporting the allegations presented in their petition, but it further appears without controversy that appellants were but part owners of the 237 acres of land in ques-

tion; that prior to the dates involved in this controversy a suit between the joint owners had been instituted in the district court for partition; and that it had been determined by the court that the land was incapable of division in kind and a receiver had been appointed with directions to take possession and control of the land and sell the same with orders to report the same to the court for confirmation. It seems undisputed in the evidence that appellees knew of the pendency of the receivership proceedings at the very time at which they testified that the contract with appellants for the sale of the land was made, and that, upon the report of the receiver of the sale or attempted sale made by appellees to R. C. Boyd, the court then declined to approve the sale at the price of $40 per acre, but later did approve a sale to R. C. Boyd at the price of $41 per acre. It further appears in the evidence that appellees applied to the receiver and sought allowance for commissions and also made like request of the court. The receiver refused to allow commissions, as did also the court, although it appears no formal minute entry to that effect was made.

[1, 2] An essential element of a real estate broker's right to recover commissions is that he shall find a purchaser ready, able, and willing to purchase upon the terms given by the owner of the land. This implies that the owner has the right, or may secure the right, to fix the terms of sale. But here the owners undoubtedly had neither of such rights. By virtue of an order of appointment a receiver becomes invested with full right to the possession and control of the property. It is in the custody of the law, and the control of the owner ends for all purposes necessary to the accomplishment of the objects of the suit. See Mrs. S. S. Turner v. Cross and Eddy, 83 Tex. 218, 18 S. W. 578, 15 L. R. A. 262; Texas Trunk Ry. Co. v. W. H. Lewis, 81 Tex. 1, 16 S. W. 647, 26 Am. St. Rep. 776; U. S. Mex. Trust Co. v. Young, 46 Tex. Civ. App. 117, 101 S. W. 1045; John C. Brown & L. A. Sheldon v. Charles Warner, 78 Tex. 543, 14 S. W. 1032, 11 L. R. A. 394, 22 Am. St. Rep. 67.

[3] When therefore the court appointed a receiver in the case referred to and directed the receiver to make sale of the land, the power of the owners to fix the terms upon which the land should be sold ended. No person other than the receiver and the court which appointed him was authorized to fix terms or authorize a sale, so that appellee must be held to have known that the receiver and the court only could do so. Doubtless the receiver might have authorized appellees to find a purchaser and agree to reasonable compensation for their services which would have been approved by the court; but the receiver, as we have seen, refused to so agree, and no allowance for such services was made

by the court. Moreover, the sale as actually attempted by appellees was not approved by the court. On the contrary, the sale was consummated upon different terms.

[4] We conclude that, with knowledge of the facts that we have stated, appellees are not in position to enforce an agreement with an owner that they knew at the time the owner had no power to make. We do not wish to be understood as holding, however, that one or more of the joint owners might not have lawfully agreed to pay commissions for finding a purchaser who was ready, able, and willing to comply with the terms fixed by the receiver and court. The interest of the joint owner to secure a ready disposition of the receivership proceedings would doubtless form a sufficient consideration to bind him in an agreement of the kind indicated, but no such case is made by the pleadings here. In other words, the suit is not based upon an agreement on the part of appellants to pay appellees for procuring a purchaser acceptable to the court, nor is it based upon allegations that appellants requested appellees to find a purchaser and seeking to recover what the services were reasonably worth. On the contrary, as we have seen, the sole basis of the suit in the pleadings is a contract that within the knowledge of appellees appellants had no power to make.

We conclude that the judgment must be reversed and remanded, and it is so ordered.