# FOURTH DISTRICT, 1901.

### W. T. Morton v. Nannie Morris.

Decided November 27, 1901.

**1.—Equity Jurisdiction—Cancellation of Void Deed.**

Although a deed be void on its face, yet since it operates as a cloud on the title of the property conveyed, a court of equity in this State has jurisdiction of a suit to cancel it.

**2.—Power of Attorney—Sale of Land.**

A power of attorney to sell land authorizing the agent to sell on such terms as to him shall seem meet, did not empower him to convey in settlement of claims or debts, nor to take for part of the consideration a nonnegotiable note of the purchaser not due until one year after the removal of an attachment lien against the land, of which the owner had no knowledge, claimed by the purchaser who was authorized to apply the money due by the note to discharging the lien or judgment to be determined in such suit; and a deed by the attorney reciting such terms was void on its face.

**3.—Same—Reformation of Deed.**

The court could not reform such deed and impart validity to it upon the offer of the defendant to pay the money due by the note in such reasonable time as the court should fix, "as long as he is protected against said attachment lien," since the court had no power to add to or subtract from the agent's authority, or to change the contract as made.

**4.—Deeds—Reformation—Mistake of Law.**

A mistake by a party as to the legal meaning and effect of an executed agreement such as a deed affords no ground for a reformation of the instrument.

**5.—Assignment of Error.**

See opinion for an assignment of error to the exclusion of evidence as to the custom in protecting against liens in making sales of land, held not sustained by the record and a bill of exceptions using broader and more general terms.

**6.—Power of Attorney—Usage and Custom.**

A publicly known usage may be proved to show that the authority of an agent was conferred in contemplation of it, but such usage can not be so substituted for the power as to give authority not conferred by the instrument itself.

7.—Same—Allegata and Probata.

Where there was no allegation in defendant's answer that plaintiff had, before the execution of the deed, enlarged the authority of the agent as conferred in the power of attorney so as to fully authorize the conveyance as made to defendant, it was not error to refuse to admit evidence of such enlargement.

8.—Same—Agent Exceeding his Powers—Cancellation of Deed.

Since one dealing with an agent selling land is bound to ascertain the extent of his powers, where a deed by an agent is canceled because made in excess of his powers, and therefore void, the principal is not required to refund a cash payment made to the agent, but which the principal never received.

9.—Same—Price Immaterial Where Deed Void.

Where a deed by an agent is void bcause made in excess of his powers, evidence in an action to cancel it that the price was the full value of the land is immaterial.

Appeal from Atascosa. Tried below before Hon. M. F. Lowe.

*James Routledge* and *G. H. Martin,* for appellant.

*J. T. Bivins* and *W. A. H. Miller,* for appellee.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by the appellee, Nannie Morris, against the appellant, W. T. Morton, to cancel a certain alleged pretended deed purported to have been made by appellee, by her attorney in fact under a power therein given by her to him. The grounds upon which the cancellation was prayed for are (1) that the deed, upon its face shows, that the agent exceeded the scope of the authority conferred on him by the power of attorney; (2) that the deed was fraudulently made in pursuance of a conspiracy between her agent and the appellant to deprive her of her property; (3) that the agent at the time he made the contract of sale and executed the deed was drunk, and incapacitated by reason thereof to make the contract for her; and (4) that the consideration agreed upon was inadequate.

The appellant answered (1) by general and special exceptions; (2) by general denial; (3) a plea of res adjudicata; (4) that after the power of attorney was executed, and before the sale was made, the appellee had enlarged the authority given therein by authorizing her agent to sell as quickly as possible, and for as much or as little as he could get, upon any terms, credit or conditions, or form of payment; (5) that when the sale was made there was an attachment lien upon the property, and that it is the general usage and custom of the country, in making real estate conveyances by attorneys in fact or otherwise, to protect the purchaser against any liens that may be outstanding against the property, and sell on such credits, and that her agent simply followed the general usage and custom in this respect; (6) that if in any respect her agent exceeded his authority in the conditions of said sale, that the deed should not be canceled on that account, for this, that appellee is ready to pay the balance of the purchase money at any reasonable time to be fixed by the court as long as he is protected against said attachment lien on the land.

Upon the trial of the cause, after the introduction in evidence of the

deed and powers of attorney, the court held that the deed, in connection with the powers of attorney, showed upon its face that appellee's attorney in fact had exceeded the authority conferred upon him, and that the deed was therefore void. Then, after hearing evidence as to the rental value of the land during the time it was occupied by appellant under the deed, the jury were peremptorily instructed to return a verdict in favor of the appellee for the cancellation of the deed and for the rental value of the property.

*Conclusions of Fact.*—Upon the 1st day of November, 1898, the appellee, Nannie Morris, by an instrument in writing of that date, appointed and constituted W. A. Brooks her attorney in fact, thereby granting and conferring upon him authority and powers as follows: "For me and in my name, place, and stead, to enter into and upon and take possession of all such messuages, land, tenements, hereditaments, and real estate whatever in the State of Texas, whereof I am or may be in any way entitled or interested and to grant, bargain, and sell the same, or any part or parcel thereof, for such sum or price and on such terms as to him shall seem meet, and for me and in my name to make, execute, acknowledge, and deliver good and sufficient deeds and conveyances for the same, either with or without covenants and warranty; and until the sale thereof, to let and demise, lease, or rent the said real estate for the best rent that can be procured for the same; and to ask, demand, recover, and receive all sums of money which shall become due and owing to me by means of such bargain, sale, or lease and rent of said real estate, and to receipt for the same; and to take all lawful ways and means for the recovery thereof, to compound and agree for the same, and to execute and deliver sufficient acquittances and discharges therefor; and I do further empower my said attorney in fact to employ counsel and authorize him to bring a suit in any court having jurisdiction for a partition of any or all of property situated in the State of Texas, which is now owned by myself and the heirs of my daughter Cora E. Morton, late of Bexar County, Texas, now deceased, and in the event of a sale of said last named property by order of court, to receive and receipt for my part of the proceeds of such sale, with power of substitution and revocation, giving and granting unto my said attorney full power and authority to collect and receipt for or to sue for and collect any other moneys that may now be, or which may become due me from any and all persons whomsoever in the State of Texas, and to attend to any and all business which I may have in the State of Texas, and perform all and every act and thing whatsoever necessary and requisite to be done and performed in and about the premises as fully, to all intents and purposes, as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do or cause to be done by virtue hereof." This instrument, after having been duly

acknowledged, was on the 23d day of November, 1898, duly recorded in the office of the county clerk of Atascosa County, Texas.

On the 18th day of November, 1898, W. A. Brooks by an instrument of that date, after reciting the authority and power conferred upon him by the foregoing instrument, nominated and appointed J. M. Eckford as his substitute attorney in fact, to do and perform each and every act and thing which by the power of attorney from Nannie Morris to him, he (Brooks) was authorized to do and perform in respect to the moneys and real and personal property and other business matters in said power of attorney named. This instrument, after being acknowledged, was duly recorded on November 26, 1898.

On the 3d day of January, 1899, J. M. Eckford as attorney in fact, by virtue of the last stated instrument, for Nannie Morris, executed a warranty deed to the appellant, W. T. Morton, purporting to convey to him 1510 acres of land (which is the property in controversy and is specifically described in the deed) belonging to the appellee. The deed recites a consideration of $1510, but the manner and conditions of its payment are recited in the deed as follows:

"It is agreed that the sum of two hundred dollars has been paid in cash, the receipt of which is hereby acknowledged and a note has been given for the balance of $1310, bearing 6 per cent interest; and it is agreed that the said note is nonnegotiable and shall not become due until one year after a certain lien upon said property created by reason of a writ of attachment issued out of Atascosa District Court in case of Morton v. Nannie Morris has been removed therefrom. Should the said suit end adversely to said Nannie Morris, the said Morton shall use the amount due on said note to liquidate the amount due on said lien by reason of said writ of attachment, and any judgment that might be rendered therein, and any balance remaining to be paid to Nannie Morris; or should said lien be removed, and no judgment be rendered therefor by payment or settlement of same by said Nannie Morris or otherwise, then the whole amount of said note shall be paid to said Nannie Morris or her agent, J. M. Eckford, within one year after the removal of such lien." This deed, which is the one sought to be canceled, after being acknowledged by Eckford, was duly recorded in Atascosa County on January 6, 1899.

It is shown by appellant's own pleadings that he was the plaintiff in the case of Morton v. Nannie Morris referred to in the deed, and it is shown by the undisputed testimony that the attachment was issued and levied at his instance after the powers of attorney were executed. It is undisputed that the appellee was never informed by Eckford of this sale to the appellant; that she never received any of the purchase money or the note given for the land, and that she never in any way confirmed or ratified the sale, but as soon as she was informed of it, repudiated the whole transaction.

Immediately after the execution of the deed the appellant went into possession of the property, and the evidence shows that its rental value

was $250 per annum for the years 1899 and 1900, and up to the date of judgment, which was March 20, 1901, during all of which time appellant was in possession of said property.

*Conclusions of Law.*—1.   We will say in limine that it is generally held outside of this State that where the defect appears upon the face of an instrument, and a resort to extrinsic evidence is unnecessary to show its invalidity, the jurisdiction of a court of equity can not be invoked to cancel the instrument.  3 Pom. Eq., sec. 1399.  But, commenting upon this general rule, in the same section the author says:  "While this doctrine may be settled by the weight of authority, I must express the opinion that it often operates to produce a denial of justice.   It leads to a strange scene, almost daily in the courts,—of defendants urging that the instruments under which they claim *are void, and therefore they ought to be permitted to stand unmolested,* and of judges deciding that courts can not interfere, *because the deed or other instrument is void,* while, from a business point of view, every intelligent person knows that the instrument is a very serious injury to plaintiff's title, greatly depreciating its market value, and the judge himself, who repeats the rule, would neither buy the property while thus affected nor loan a dollar upon its security.   This doctrine is, in truth, based upon mere verbal logic, rather upon considerations of justice and expediency."   In Day Land and Cattle Company v. State, 68 Texas, 527, the Supreme Court, after quoting with approval the foregoing criticism, held that, though an instrument may be void upon its face, a court of equity not only has the power to declare its nullity, but should exercise that power and cancel it when a defendant asserts a right under it.   Regarding this as settling the question of jurisdiction, we will pass to the consideration of the main question in the case.

2.   Does the instrument sought to be canceled show upon its face that it is in excess of and unauthorized by the power conferred by the grantor in the letter of attorney given to her agent?   It is elementary that a power of attorney must be strictly construed according to its plain import.  Frost v. Cattle Co., 81 Texas, 505; Skaggs v. Murchison, 63 Texas, 348; Wynne v. Park, 30 S. W. Rep., 52.   When an agency is created by a written instrument, the nature and extent of the authority given by it should be ascertained from the instrument itself, and can not be enlarged by parol evidence of the usage of other agents in like cases, as that would be to contradict or vary the terms of the written instrument.   Reese v. Medlock, 27 Texas, 120; Railway v. Poindexter, 70 Texas, 107; McAlpine v. Cassidy, 17 Texas, 449; Skaggs v. Murchison, supra.   A power to sell land does not of itself imply an authority to sell on a credit.   The presumption is that the sale is to be for cash.  Pars. on Cont., 58; 2 Kent Com., 622; Story on Ag., sec. 77; Am. and Eng. Enc. of Law, 360.   But when an agent is authorized to sell "on such terms as to him shall seem meet" he may grant a reasonable time.  Mech. on Ag., sec. 325; Dyer v. Duffy, 39 W. Va., 148, 24 Law. Rep.

Ann., 339, 19 S. E. Rep., 540; Brown v. Land Co., 42 Cal., 257; Carson v. Smith, 77 Am. Dec., 539, 5 Minn., 78.

Nor will a power to sell and convey land imply an authority to barter or exchange it for other property, or to give it away, or to take pay in merchandise or in settlement of claims or debts. Frost v. Cattle Co., 81 Texas, 509; Reese v. Medlock, supra; Rhine v. Blake, 59 Texas, 240; Trudo v. Anderson (Mich.), 81 Am. Dec., 795; Mann, Exrs. v. Robinson, 19 W. Va., 49, 42 Am. Rep., 771; Woodward v. Jewell, 140 U. S., 253; Morrill v. Cone, 22 How., 75; Kleinhaans v. Jones, 68 Fed. Rep., 746, 37 U. S. App., 185; Hampton v. Moorehead, 62 Iowa, 91.

In Frost v. Cattle Company, supra, the powers granted to the agent were more extensive and of much broader scope than those conferred by the power of attorney under consideration in this case. It was there held, after considering some of the authorities we have cited, that a power to sell and convey does not include the power to convey in discharge of a debt or claim. Leaving out of view, as we must, in determining the naked question as to whether the appellee's agent went beyond the scope of his authority, the facts that the appellant was the party plaintiff in the case recited in the deed sought to be canceled; that he procured the issuance and levy of the attachment on the property in controversy upon a demand founded upon an alleged tort, which from its nature would furnish no foundation for the writ (this, too, after the power of attorney had been executed); and that appellee was wholly ignorant of the pretended lien asserted in the deed when, and long after it was executed,—facts undisputed and fully established by the evidence,—we will now, in the light of the well-established principles stated, consider the question.

As is seen from our conclusions of fact, the note of $1310 given for the purchase money is nonnegotiable, and can not become due until one year after the recited lien has been removed from the property. The power of attorney is silent as to any suit against its maker, or any lien upon her property. Were it not for the fact that it empowers the agent "to sell on such terms as to him shall seem meet," there could be no implication that authority was given to sell on a credit, but the presumption would be that the sale should be for cash. As it is he was authorized to sell on reasonable credit. While what is a reasonable credit is ordinarily a question of fact to be determined by the jury, yet that is referable to a definite length of time which must elapse before the purchase money according to the terms of sale becomes due, not to the contingency, or to the time of the happening of an event which is indefinite, or over which the grantor has no control. No authority was conferred upon the agent to determine that a lien existed upon the property, and make the time when the purchase money should become due contingent upon its removal or discharge. True, that is certain which can be made certain. And it may be said that by discharging the supposed lien the appellee could, under the terms of the deed, have fixed definitely the time of the note's maturity. But no indebtedness had been established

against the appellee, or acknowledged by her. Its existence was a matter for judicial determination, and, if not so determined, the supposed attachment lien would fall to the ground. Can it be said, then, that the agent was authorized to make a sale on such terms as would require his principal to discharge a lien by the payment of a disputed claim, in order to make certain the time when the purchase money for her property would become due? To assert such a proposition is to refute it. The only way by which the time when the note would become due could be known would be to await the termination of the suit in which the attachment was levied. One must be imbued with the spirit of prophecy to foretell when a lawsuit will end. It may drag its weary length along until starvation stares the hopeless creditor in the face while the debtor grows fat in the possession of her property. Is twelve months after the uncertain time of the ending of a lawsuit a reasonable credit to be given by an agent for the payment of the purchase money due for the sale of his principal's property? As a matter of law, we think not.

But the uncertainty and indefiniteness of the time of payment is not the only matter in which appellee's agent went beyond the scope of his authority. It depends upon how the lawsuit mentioned in the deed terminates whether she is ever paid anything or not. "Should it end adversely to her, the appellant shall use the amount due on said note to liquidate the amount due on said lien by reason of said writ of attachment, and any judgment that may be rendered therein;" thus, by the deed, empowering the purchaser not only to withhold the purchase money for an indefinite time, but to use it himself in discharging the lien or any judgment that may be rendered in the suit, regardless of whether the lien is established or not. In our opinion, to hold that the power conferred such extraordinary authority, would be to disregard all the principles not only of law and equity, but of justice and reason. The agent himself had no authority under the power to apply the proceeds of the sale to the discharge of a lien or payment of a debt against his principal. How could he, then, confer authority upon the purchaser that he did not himself possess? Had such authority been given him, he had no right to delegate it to the party to whom he sold the property. Every power of an agent must find its ultimate source in some act of his principal. Mech. on Ag., sec 276. This power sought to be given by the deed to appellant is nothing more or less than authority, upon a certain contingency, to discharge a debt or claim. As the agent under his power to sell and convey had no such authority (Frost v. Cattle Company, supra), he could not confer it upon the appellant. Suppose, in the event of a judgment on the claim against appellee, the appellant should not appropriate the money due on the note to its liquidation; she would then have to pay the judgment herself, or have other property taken in execution, and it may be, have to wait for twelve months afterwards for the note to mature before she could sue upon it. The authority for such a contract of sale can not be traced to any act of the appellee as its source. We must therefore hold that the appellee's

agent exceeded the scope of his authority in selling her property upon the terms stipulated in the deed, and that such instrument is void on its face.

3. It is urged by appellant that even if the agent exceeded his authority as to the extent of the credit, or as to the agreement that Morton might apply the amount due on the note to clearing up and removing any lien that might exist on the land, still as he had offered to pay the balance of the purchase money due in cash, and asked for a reformation of the instrument in so far as it exceeded the authority conferred, the deed should not have been declared void in toto, but only the particular clause which was in excess of the agent's authority, and such instrument should have been reformed and not canceled.

It is a sufficient answer to this contention to say that the appellant never "offered to pay the balance of the purchase money in cash." The averments in his answer are: "But if, in any respect, he [the agent] exceeded his authority in the condition of said sale, the sale should not be canceled on that account; that this defendant is ready to pay the balance of the purchase money *at any reasonable time* to be fixed by the court, as long as he is *protected against said attachment lien on said land.*" Thus it is seen the tender is conditional, and authorizes the court to fix a reasonable time for the payment of the purchase money. The law has conferred no such authority upon the court, nor was it given by the appellee. If the deed was void for lack of authority given the agent, the court can not validate it by an assumption of authority not given by the law or the contract between the parties. The instrument must stand or fall upon the authority given by the principal to her agent, and the court is without power to subtract anything from or add anything to such authority. It is only when there is a mutual mistake (that is, where there has been no meeting of minds), and an agreement actually entered into, but the deed or other instrument in its written form does not express what was really intended by the parties thereto, that a court of equity will reform an instrument on the ground of mistake. Pom. Eq. Jur., sec. 1375. A mistake by a party as to the legal effect of an executed agreement is no ground for affirmative relief. In the absence of elements of fraud, concealment, etc., or other inequitable conduct in the transaction, the party who knew, or had an opportunity to know, the contents of an agreement or other instrument can not obtain its reformation because he mistook the legal meaning and effect of the whole or any part of its provisions. Pom. Eq. Jur., sec. 843.

The appellant nowhere in his answer indicates wherein by mistake of the parties the deed failed to express the agreement or terms of sale. His contention throughout is that it does express the true intent of the parties, and it is only in the event he has mistaken the legal meaning and effect of the instrument he asks for its reformation.

4. The fourth assignment of error is as follows: "The court erred in refusing to permit defendant, Morton, to show that it was the usual and general custom of the country where said land was situated to exe-

cute conveyances and make sales of land on the terms of credit specified in the deed in this case, and to provide and agree therein that the purchaser might apply any balance of the purchase money that might remain due to the satisfaction of any lien that might exist on said land in this case, because such testimony tended to, and would, show that such terms of credit, agreement, conditions, and usage were in contemplation of the parties at the time the power of attorney was executed, and that the agent had not exceeded his authority, and that the sale was not void."

No statement can be made from the record that will support this assignment or the proposition thereunder. The only allegations in appellant's answer which can have any relation to the assignment are as follows: "That it is the general usage and custom of the country in making real estate conveyances by attorneys in fact or otherwise, to protect the purchaser against any liens that may be outstanding upon the property, and sell on such credit, and Eckford (the agent) simply followed the general usage and custom in this respect." The appellant's bill of exceptions shows that he "offered to introduce evidence in support of each and every allegation and defense contained in his answer and pleadings." Evidence that would sustain the allegations quoted would fall far short of establishing such facts as are recited in the assignment of error. It may have been the usage and custom in the country, in making real estate conveyances by attorneys in fact, to protect the purchasers against any liens on the property and to sell on a credit; but it would not follow that it was the "general custom of the *county where* the land was situated to execute conveyances and make sales of land on *such terms of credit* as are specified in the *deed in this case,* and to provide and agree therein that the purchaser might apply," etc. The authority of the attorney must be ascertained from the language of the instrument which confers the authority (Blum v. Robertson, 24 California, 127), and all persons dealing with the attorney must take notice of the powers conferred by it, and that the agent can not exercise authority in excess of his powers. Publicly known usage may be proven to show that the authority was conferred in contemplation of it, but such usage can not be so substituted for the power as to give authority not conferred by the instrument itself. That would be to contradict or vary the terms of a written instrument (Reese v. Medlock, supra), not to explain its meaning by the light of known usage.

5. There is no allegation in appellant's answer "that, before the execution of the deed to him, Nannie Morris had enlarged the authority and powers conferred in the powers of attorney so as to fully authorize the sale and conveyance of said land under the *terms* and *conditions* by which the same was *conveyed and sold.*" There being no such allegation, the court did not err in refusing to admit the evidence of such enlargement, as is complained of in appellant's fifth assignment.

6. A party dealing with an agent is bound, at his peril, to ascertain the extent of the agent's powers. Story on Ag., secs. 210, 211, et seq. The appellant was charged with knowledge that the sale to him was un-

authorized and therefore void. Knowing this when he paid the money to Mr. Eckford, he has no right to look to the appellee, who never received a dollar of it, or in any way ratified the sale, for its repayment on the cancellation of the void deed. Or, in the language of appellee's counsel, "Where an agent, in attempting to sell land for his principal, exceeds his authority, there is no sale, and the deed being void, the principal is not bound to the would-be purchaser for any money he might have paid, unless it came into the possession of the principal," or he received the benefit of it. 1 Dev. on Deeds (note), pp. 347, 348; Hampton v. Moorehead, 17 N. W. Rep., 202. None of the authorities cited by appellant's counsel support his proposition under his sixth assignment of error.

7. The court did not err in sustaining the exceptions to appellant's plea of res adjudicata. While the parties were the same to the judgment plead in bar as they are in this case, the subject matter of the suits is different, as well as the terms of sale.

8. If the deed were void by reason of the agent's going beyond the scope of his authority, it would be immaterial whether or not the price stated in it was the full value of the land. Therefore the evidence offered by appellant to show that it was worth no more than the price so stated was properly excluded.

9. All questions presented by the remaining assignments of error are involved in those already considered, and have been determined adversely to appellant.

The judgment is affirmed.

*Affirmed.*