**BROOKS v. O'CONNOR et al.    (No. 9176.)**\*

Court of Civil Appeals of Texas. Galveston.
• Jan. 19, 1929.

Dissenting Opinion Jan. 23, 1929.   Rehearing Denied March 7, 1929.

---

*Writ of error granted.

Morris, Sewell & Morris and R. H. Ward, all of Houston, for appellant.

J. T. Linebaugh, of Victoria, and H. W. Wallace, of Cuero, for appellees.

PLEASANTS, C. J. This is the second appeal in this controversy. The opinion of this court in the former appeal is reported in Booty v. O'Connor, 287 S. W. 282–289. In the case cited the appellees in this case sued in trespass to try title to recover of appellant herein, R. E. Brooks, and the administratrix of the estate, and the heirs, of E. F. Booty, deceased, the identical 160 acres of land involved in this suit. The plaintiffs in the former suit recovered in the court below against all of the defendants. Upon the appeal, this court affirmed the judgment as to all the defendants except appellant, R. E. Brooks, and reversed and rendered judgment in favor of Brooks, that the plaintiffs take nothing by their suit against him.

The record on the first appeal, Booty v. O'Connor, 287 S. W. 282, before cited, disclosed that plaintiffs in that suit, appellees here, recovered the land on the superior title held by them as the owners of a vendor's lien reserved in the deeds of conveyance under which E. F. Booty obtained his title, and further showed that the plaintiffs had, subsequent to the purchase of the land by him, loaned Booty $4,500 and taken his note therefore secured by a deed of trust on the land. This note and the security therefor, which constituted a second lien on the land, was then and is now held by Brooks under transfer and assignment from the plaintiffs. Upon the facts disclosed in the former case, we held that plaintiffs, under the pleadings and evidence in that suit, were estopped from recovering the land as against Brooks so as to foreclose his equities as a second lienholder, and rendered judgment in his favor as before stated. Our opinion in the former case, after directing the rendition of the judgment in favor of Brooks, declares that "this judgment shall in no wise affect the O'Connors' right as against Brooks to foreclose their prior lien."

The suit from which this appeal is prosecuted was brought by the plaintiffs in the former suit against the appellant, R. E. Brooks, for the settlement and adjustment of the rights of the appellant, R. E. Brooks, in the land, if any he has, and in the alterna-

tive to have the record of appellant's second lien upon the land removed as a cloud upon plaintiffs' title. Plaintiffs' petition is necessarily lengthy, and we shall only state such of its substance and allegations as are required to show the character and purpose of the suit.

After naming the parties plaintiff and defendant in this and the former suit, and describing the vendor's liens under which plaintiffs held the superior title to the land, the amounts due upon the several vendor's lien notes, and also the note for $4,500 and the second lien given for its security, which plaintiffs had transferred and assigned to appellant, Brooks, and which is now held by him, the petition alleges the recovery of the judgment in the court below in the former suit against the administratrix and heirs of E. F. Booty for the 160 acres of land involved in this suit and the affirmance of that judgment on appeal to this court, and further alleges:

"Plaintiffs do not know and cannot accurately state what the facts are in regard to whether the said $4,500.00 note so assigned to defendant, principal or interest, or any part thereof, has been paid in whole or in part. No release of said second lien deed of trust so assigned and transferred to said Brooks has been recorded in the office of the County Clerk of Jackson County, Texas.

"Upon the trial of said former suit No. 1746 in this court these plaintiffs requested the said defendants in that suit, and particularly the said Brooks, to pay these plaintiffs the amount due them on their said purchase money notes, and plaintiffs then and there offered to receive the same, in satisfaction of their claims on said land, but the said defendants, and particularly the said Brooks, failed and refused, and have ever since failed and refused to pay or to offer plaintiffs the amount due them on said purchase money notes for said land, although the plaintiffs have continuously offered, and here now offer, and will continue to offer, to accept and receive the amount owing them on said purchase money notes, if defendant or any one else, will pay them the same, and to transfer to and subrogate the person paying same to all the rights of plaintiffs to said land.

"None of the principal of the purchase money aforesaid has ever been paid, and no interest has been paid thereon since October 5, 1920. The said E. F. Booty is dead and his estate is wholly insolvent. No other person, within the knowledge of plaintiffs, is legally bound or obligated to pay said money, or any part thereof. Plaintiffs have no security of any sort for the money so justly due them other than their interest in said land, and plaintiffs will wholly lose the said money if they are not allowed to resort to the proceeds of the sale of said land under the decree of this court, in the event the defendant,

Brooks, is equitably entitled to have the said land sold under decree of the court, or in case the said Brooks is not so entitled, then unless they can have, hold and enjoy said land free from the claims and pretensions of said Brooks and from the cloud on the plaintiffs' title cast thereupon by the unreleased second lien assigned to the said Brooks as aforesaid.

"If the said Brooks has now, or claims to have, any lien or interest upon said land, then plaintiffs aver that by reason of the express stipulations in said written assignment from Wm. J. O'Connor, executor, etc., to the said Brooks, of the said $4,500.00 note and second lien deed of trust, which assignment and indorsement of said note to Brooks expressly stipulated that same were without recourse, and which assignment was accepted by said Brooks, and contained the stipulations set forth in paragraph VII hereof, the said Brooks contracted, agreed and bound himself with plaintiffs that said second lien deed of trust and said note should be, and they are now, in every respect subordinate, inferior and junior to the rights, titles, liens and interests of the plaintiff in said land to the extent of the purchase money and interest and attorney's fees thereon.

"Defendant Brooks well knew of the existence of the superior title in plaintiffs, and of the deeds of trust extending and securing the purchase money owing plaintiffs by Booty, as before stated, and had actual notice and knowledge thereof, and by reason of the recordation of the transfer of the vendor's lien and superior title to plaintiffs, and of the said deeds of trust extending same, he had constructive knowledge of all of the same, at and before the time he acquired any lien or interest in said land.

"Plaintiffs believe and so allege that any sum owing defendant by Booty or his estate, secured by any lien or claim on said land, is past due, and plaintiffs do not know of any reason, and therefore allege that none exists, why defendant should not set up his rights, if any, to the said land in this suit, and have the same determined, in order that there shall be an end of litigation and contentions between the parties, and that plaintiffs and defendant may have their due.

"If defendant in fact has no just rights or interests or liens upon said land, then plaintiffs aver that they have good and perfect right and title to said land but the unreleased lien for $4,500.00 assigned to defendant as aforesaid manifestly constitutes a cloud upon their title which tends to prevent, if not absolutely preventing, any sale or disposition thereof by plaintiffs, and constitutes a menace of the rights of plaintiffs which belittles and embarrasses their said title and property rights, all without just cause or equitable basis, and which cloud upon their title plaintiffs in such event are

entitled to have removed by judgment of the court, and to have their title quieted as against the claims and pretensions of the defendant.

"The said final judgments of this court and of the Court of Civil Appeals in said former suit No. 1746 adjudged that plaintiffs' rights and interests in said land, to the extent of the said purchase money due them, are paramount and superior to the rights of defendant in said land. That question was legally at issue in said suit, and these plaintiffs and said Brooks were parties to the same, and said judgments are now in full force and effect, and plaintiffs therefore allege that defendant is now bound and concluded thereby, and by reason of said former adjudication of said question that plaintiffs' rights, titles and liens in and to said land are paramount, prior and superior to any and every right of defendant therein, and that defendant is precluded by said former judgments from denying the priority of plaintiffs' interest in said land over the rights of the defendant.

"The defendant is asserting and contending that in some way not known to plaintiffs, he will contrive to have his claim, whatever it may be, but which plaintiffs show is in every respect junior, subordinate and subsequent to the rights of plaintiffs, paid out of said land or the proceeds of the sale thereof before any of the same is applied to the payment of the purchase money so justly due and owing plaintiffs as aforesaid. That under and by reason of his claims and pretensions defendant threatens continuous litigation and a multiplicity of suits with plaintiffs in regard to said land, and thus to continue to becloud the title thereto and belittle and embarrass the property rights of these plaintiffs, all to their great and unjust injury, loss and damage.

"Plaintiffs show that they have no adequate remedy at law for the protection of their said property rights, or to remove the said clouds upon the said title to said land, or to recover the purchase money, interest and attorney's fees out of said land, and unless this court through its equity powers interposes and adjusts the equities of the respective parties, and decrees the peace herein, and quiets the title to said land, and protects plaintiffs by decree as hereinafter prayed, they will suffer great, unjust and irreparable loss and injury.

"Plaintiffs do not claim any right to, nor do they seek, any personal or money judgment against defendant.

"Plaintiffs recovered the title and possession of all of said land from the widow and heirs and administratrix of the estate of said E. F. Booty, deceased, in said former suit No. 1746, as hereinbefore alleged, and said judgments of this court and of the Court of Civil Appeals in said former suit are still in force and effect and plaintiffs therefore

allege that the administratrix of Booty has no interest whatever in said land and the Probate Court in which said administration is pending has no jurisdiction over the same, nor of these plaintiffs, nor of the issues, matters and things herein pleaded, and that plaintiffs and defendant Brooks are the only persons having any interest whatever in the subject-matter of this suit."

Then follows a description of the land involved in the suit, and the following prayer for relief.

"Premises considered, plaintiffs pray that defendant be cited in terms of the law to appear and answer this petition, and that the defendant be required to set up all of his claims, rights and interests upon and to the land aforesaid; that if the said Brooks fails by his answer herein to show or allege that he has any legal or equitable rights or liens in or to said land, or some of it, or if upon final hearing it be determined that said land, or some of it, or if upon final hearing it be determined that said Brooks has no lien upon said land, or any of it, that then plaintiffs have judgment against said Brooks removing all said cloud upon their title to said land and quieting their said title; and that if it be determined that said Brooks in fact has any lien upon said land, or any of it, securing any amount justly due him, that the amount of same be determined by the judgment of the court in this cause, and that the said lien for such amount be determined and adjudged to be inferior and subordinate to the rights of plaintiffs and also in such event that the court hear and determine from the evidence the amount legally and justly due plaintiffs upon the purchase money notes aforesaid and the renewals thereof with interest and attorney's fee, and adjudge and decree that the same is secured by paramount lien upon all of said land in every respect superior and prior to the rights of defendant, Brooks, and that then the court by its decree herein foreclose the said superior right and lien of plaintiffs as against the said Brooks and order the sale of all of said land and premises as under execution and direct that the proceeds of such sale be first applied to the payment of all costs of this action and costs of sale, and, second, to the payment of the amount so adjudged and determined to be due these plaintiffs, and, third, that the remainder of such proceeds be applied to such claim of defendant, Brooks, or otherwise, as the facts may warrant. And plaintiffs further pray for all such other and further relief, general and special, legal and equitable, as they may show themselves entitled to receive, and as in duty bound will ever pray."

The defendant Brooks presented the following plea to the jurisdiction of the court: "Now comes defendant, R. E. Brooks, and in answer to plaintiffs' original petition filed herein, states to the court that this court ought not to entertain the cause of action set forth therein and to further take cognizance of the same, because this court has no jurisdiction of the matters and things set forth therein, but exclusive jurisdiction of the same is vested in the Probate Court of Jackson County, Texas, for this:"

This plea, which is presented as a part of his amended answer on which the case was tried, then sets out the substance of the allegations of plaintiffs' petition as to the execution of the vendor's lien notes by E. F. Booty, and the transfer of these notes, together with the superior title held by the vendor of the land, to plaintiffs, and also the subsequent execution by Booty and wife of a $4,500 note to plaintiffs' predecessor in title, secured by a deed of trust on the land, and the transfer and assignment to defendant of said note, together with the lien created by said deed of trust to secure its payment. The plea further sets out the allegations of plaintiffs' petition, that by the express terms of the transfer of said note and lien the defendant Brooks "contracted, agreed and bound himself with plaintiffs that such second lien deed of trust should be and now is in every respect inferior and junior to the rights, title, liens and interests of plaintiffs in said land to the extent of the purchase money and interest and attorney's fees thereon." It is then alleged, in the answer, that:

"This defendant admits, as alleged by plaintiffs, that plaintiffs obtained the note set out in plaintiffs' petition for $4,500.00, and received the deed of trust from the said Booty and wife to secure the same, and that plaintiff assigned said note and said deed of trust and the lien thereof to this defendant, and that it was expressly provided and stipulated in said assignment that the note for $4,500.00 and the lien in the deed of trust to secure the same expressly provided that this defendant in accepting said assignment did so with the distinct agreement and understanding that the same was in every respect junior, subordinate and secondary to the lien of plaintiffs sought to be foreclosed in this case; and this defendant avers that he has never claimed to the contrary, but has always admitted and now admits and asserts that the said lien transferred to him, together with the transfer of said $4,500.00 note, is junior, subordinate and secondary to the lien of plaintiffs.

"This defendant further says that he has no claim to said tract of land or interest in the same of any character or sort and has not and does not now assert the same save and except as a junior lien holder upon said land to secure the indebtedness of said Booty to him, his said liens as aforesaid being subordinate and secondary and junior to that of the plaintiffs; that there has never been any issue or dispute between plaintiffs and this

defendant as to the priority of plaintiffs' said lien on said tract of land, and this defendant further avers that there has never existed and does not now exist any equities or conflicting claims of any sort to be adjusted between plaintiff and this defendant. That the undisputed facts are that plaintiffs have a prior and undisputed indebtedness secured by liens on the lands in controversy, which are first and superior to the indebtedness and liens of this defendant on said land.

"This defendant further avers that in the assignment by plaintiffs to this defendant of the $4,500.00 note, together with the deed of trust securing the same, as alleged by plaintiffs, it is expressly stipulated and provided therein that the said debt evidenced by said $4,500.00 note and the said deed of trust executed to secure the same, were junior, subordinate and secondary to the debt and lien sought to be foreclosed by plaintiffs in this cause, and defendant asserts that this defendant's claim of lien on said land to secure said $4,500.00 note cannot and does not constitute any cloud upon plaintiff's title, as said deed of assignment shows upon its face that the defendant's said lien is subordinate, secondary, junior and inferior to plaintiff's said lien.

"That this court, by reason thereof, has no jurisdiction of the matters and things set forth in plaintiffs' said petition, but that such matters and things are exclusively cognizable in the Probate Court of Jackson County, Texas.

"That it is true that the defendant E. F. Booty died on the 30th day of June, 1922, in the County of Jackson, State of Texas, and that he died intestate, and that at the time of his death he was a resident of the County of Jackson, State of Texas; that on the 18th day of October, A. D. 1922, the defendant Mrs. Gertrude Booty was by decree of the County Court of Jackson County, Texas, appointed Administratrix of the estate of E. F. Booty, deceased, and that she thereafter gave a bond as such administratrix, in the amount fixed by the court and as required by law, and which bond has been duly approved by the Judge of said court; that on the 30th day of October, A. D. 1922, the said Gertrude Booty made and filed in said court her oath as said administratrix, and on the 30th day of October, 1922, letters of administration on the estate of said E. F. Booty, deceased, were granted to her and she thereby became and continued to be and is now the duly qualified and acting administratrix of the estate of E. F. Booty, deceased; that such administration is still pending and open, having never been closed.

"Wherefore, this defendant prays that this court will not take further cognizance of the matters and things set forth and contained in plaintiffs' said petition, but that this court will dismiss the same."

This plea was sworn to by the defendant.

The defendant further answered as follows:

"And should this defendant's plea to the jurisdiction of the court be overruled, without any manner waiving the same, but still insisting upon and relying upon the same, defendant for further answer to such petition avers and states:

"1. That he demurs to the allegations in the same and says that the same are insufficient in law and show no cause of action against this defendant.

"2. Specially excepting to the allegations in said petition, this defendant says that the same are insufficient in law because it is not averred in said petition that the debt and lien of plaintiffs were ever presented to the said administratrix of the estate of E. F. Booty, deceased, or to the Probate Judge of Jackson County, Texas, for allowance and approval, as required by law; nor is there any averment therein that said administratrix has ever refused to allow said lien or debt of plaintiffs, or that the Probate Court of Jackson County has ever refused to approve said lien or debt.

"3. Defendant further specially excepts to said petition because said allegations show upon their faces that the Probate Court of Jackson County alone has jurisdiction of the matters and things set forth in said petition, and has exclusive jurisdiction over the enforcement and foreclosure of plaintiffs' said debt and lien, and that this court has no jurisdiction thereof.

"4. Defendant specially excepts to that part of the prayer in plaintiffs' said amended original petition whereby they seek the relief that their superior title vendor's lien and deed of trust lien on said land be established, fixed and decreed to be in every respect prior, paramount and superior to any and every right of this defendant, and that the court by its decree not only determine and adjudge the amount of plaintiffs' indebtedness, but that the plaintiffs' lien be foreclosed, and that the decree of this court order the sale of all lands and premises as under execution, and that the proceeds of such sale be applied to the amount due the plaintiffs as determined by the decree of this court, because even if this court has jurisdiction to foreclose the liens of plaintiffs, that this court would not have jurisdiction to foreclose the liens of plaintiffs and order the sale of said property because whatever judgment this court should render in the premises must be enforced by and through the Probate Court alone, this court having no jurisdiction or authority to enforce its decree of foreclosure.

"Defendant further prays that plaintiffs take nothing by their suit, but that this cause of action be dismissed and this de-

fendant go hence without day and have judgment for costs."

The trial in the court below without a jury resulted in a judgment in favor of plaintiffs. After overruling the plea to the jurisdiction of the court, general demurrer, and special exceptions to the petition, the judgment makes the following recitals and adjudications:

"Thereupon, the court having heard the plaintiffs' petition, the defendant announced to the court that he would not further plead in this cause other than his plea and exceptions to the jurisdiction of the court and his general and special exceptions to plaintiffs' petition and prayer that plaintiffs take nothing by this suit, nor submit any evidence whatsoever save the evidence he introduced under and in support of his plea to the jurisdiction of the court, and said nothing in bar of plaintiffs' action. Wherefore, the plaintiffs ought to recover as prayed in and according to the merits of the cause of action set forth in their petition. And the court having heard the pleadings, evidence and remarks of counsel, and the defendant expressly refusing to assert or set up in answer to the merits of the suit any claim, interest or lien in or upon the land hereinafter described, and specifically refusing to submit any proof or evidence to the court tending to prove or establish any right, title, lien or interest in or upon said land, or the nature, extent or amount of his claims, liens or interest upon or in said land, if any he has, the court finds and adjudges that plaintiffs are the legal owners of the land and premises hereinafter described and are entitled to have the cloud on their title to the same removed and their title quieted as hereinafter decreed."

The judgment then describes the deed of trust held by defendant upon the 160 acres of land involved in the suit and adjudges and decrees that said deed of trust, in so far as it affects the land in controversy, is "canceled and held for naught," and that the title of plaintiffs in the land is adjudged "to be free and quit of any lien or incumbrance by reason of said deed of trust or said note, and the said R. E. Brooks is hereby forever debarred and precluded from having, demanding, setting up or claiming in any way or by any proceeding any right, title, lien, mortgage or other interest, claim or demand, legal or equitable, in or to the said land, or any part thereof, by reason of said deed of trust or the promissory note described therein.. It is further ordered and decreed that plaintiffs do have and recover of and from the defendant R. E. Brooks, all costs in this behalf expended for which execution may issue."

It would serve no useful purpose to set out or discuss in detail the several propositions relied on by appellant to reverse the judgment of the trial court. These propositions are lengthy and somewhat involved, but in substance present only three questions. viz.: Whether the trial court has jurisdiction of the cause of action. Did the trial court err in overruling the general demurrer and special exceptions to the petition? Is the judgment supported by the pleadings and evidence?

■ We have no difficulty in reaching the conclusion that the trial court had jurisdiction of the subject-matter of the suit. The record conclusively shows that appellees had title to the land in controversy, subject only to appellant's right to enforce his second lien thereon for whatever amount might be due upon the note for $4,500 transferred to him by appellees. All title in the estate of Booty having been divested therefrom by the judgment in the former suit which was affirmed by this court, it is manifest that the probate court of Jackson county could have no jurisdiction to adjudicate and enforce a lien upon the land, and the only court in which the rights and equities of the parties could be adjudicated and settled was the district court.

It seems to us that the situation is not different from what it would be if Booty had in his lifetime, subsequent to the acquisition by appellant of his second lien, conveyed the land to plaintiffs in satisfaction of their prior lien. It is so obvious that in such circumstances a probate court administering the estate of Booty would have no jurisdiction to foreclose or fix any lien upon the land, that citation of authorities is unnecessary.

We do not think the petition failed to allege a cause of action, and therefore the trial court did not err in overruling the general demurrer.

■ A general demurrer to a petition, or a bill in equity, should not be sustained if upon any reasonable construction of its allegations a cause of action, or any ground for equitable relief, against the defendant is alleged, and every reasonable intendment of the pleader will be indulged in favor of the sufficiency of the petition. Key West Wharf Co. v. Porter, 63 Fla. 448, 58 So. 599, Ann. Cas. 1914A, 173.

■ In the case of Booty v. O'Connor, in which the judgment of the trial court awarding plaintiffs title to the land in controversy against the estate and heirs of Booty was affirmed, the only controlling question considered and decided was whether the judgment in favor of plaintiffs against the estate and heirs of E. F. Booty and appellant, R. E. Brooks, for the title and possession of the land, should be affirmed. In answering this question, this court held in effect that the judgment should be affirmed as to the estate and heirs of Booty, but should, under the pleadings and evidence in that case, be reversed and rendered as to appellant, Brooks, because plaintiffs were estopped up-

on the undisputed evidence in the case from extinguishing Brooks' second lien on the land by recovering, on their superior vendor's lien title, the title held by Booty under his deed of conveyance. The statement at the close of the opinion that, "This judgment shall in no wise affect the O'Connors' right as against Brooks to foreclose their prior lien," did not mean, and cannot be reasonably construed as meaning, to limit the right of plaintiffs to such proceedings in a strictly technical sense. As properly construed, the opinion in that case left the plaintiffs and appellant, Brooks, in the identical position they would have occupied as to each other if he had not been made a party to the suit against the Bootys for recovery of the title. In this situation, appellant had the right to redeem the land from the prior lien held by appellees by paying the amount due appellees, or he might enforce his rights by suit to foreclose his lien and have the land sold subject to appellees' lien. Shelton v. O'Brien (Tex. Com. App. 1926) 285 S. W. 260; Hunt v. Makemson, 56 Tex. 9; Pomeroy's Equity (3d Ed.) vol. 3, § 1220, p. 2435.

When he failed to offer to redeem, or to bring suit to enforce his second lien, appellees had the right to bring suit and require him to either redeem the land or assert his lien thereon to secure past-due indebtedness and foreclose such lien and have the land sold and the proceeds applied in satisfaction of the respective liens. To deny such right to appellees in this case would so shorten the arm of equity as to prevent a district court, which in the judicial system of the state is the great reservoir of equity jurisdiction, from exercising the power to justly settle the controversies and property rights of litigants. The petition alleges, and the record shows, that appellant's second lien covers a number of tracts of land in addition to the 160 acres involved in this suit, and the petition further alleges that plaintiffs are not informed what amount, if any, is due appellant upon the lien claimed by him upon the land in controversy. It can be readily seen that in such circumstances great injustice and injury might be occasioned plaintiffs by appellant's refusal to assert his rights and interest in appellees' land.

In 19 Ruling Case Law, pp. 635 and 636, § 452, it is said: "And a purchaser at a foreclosure sale of a senior mortgage, to which the junior mortgagee was not a party, may properly invoke the aid of equity in a suit to which the junior mortgagee is made a party to compel him to exercise his right of redemption or be barred therefrom."

Under this view of the law it is clear that the trial court did not err in overruling the general demurrer to the petition. The special exceptions to the petition are all predicated upon the proposition that the probate court of Jackson county was the only court having jurisdiction of plaintiffs' cause of action. Our holding above made that the trial court had jurisdiction of the case answers these exceptions and approves the ruling of the trial court thereon.

We think the pleadings and evidence amply sustain the judgment. To recapitulate: The pleading and evidence show that appellees have the title and right of possession of the land; that appellant has a recorded lien on the land to secure a past-due debt; that this lien is insubordinate to the lien held by appellees, the surrender of which was the price paid by them for the land. Appellees' petition tenders to appellant the right of redemption, and asks that he be required to redeem or assert his foreclosure rights, and prays in the alternative that, if appellant fails or refuses to assert any right in the land, his recorded deed of trust in so far as it affects plaintiffs' title to the land in controversy be canceled and discharged of record. In answer to this, appellant makes no denial of the allegations of the petition and offers nothing in bar of plaintiffs' right, further than a plea to the jurisdiction of the court, and by his pleadings and evidence declines to assert any claim or offer any evidence upon which the court could fix or foreclose any lien in his favor upon the land.

Upon this state of the pleadings and evidence, we think the trial court was authorized, if not compelled, to render judgment canceling the apparent lien held by appellant upon the land.

It follows from what we have said that the judgment should be affirmed, and it has been so ordered.

Justice GRAVES dissents from the conclusions of the majority of the court, and will make a statement of his grounds of dissent.

Affirmed; Justice GRAVES dissenting.

GRAVES, J. (dissenting). Should the present judgment of this court prevail, it seems to me that the shape of the law in this controversy—like that of the East-Tennessee mountain lad's homemade breeches—will be such that you cannot tell whether the litigants are going to town or coming home; in other words, that this court in this case, with no more warrant than then existed, under either the pleadings or proof, has now permitted the appellees O'Connors to recover the same 160 acres as against appellant Brooks by in effect "asserting a superior title to the land by virtue of being the holders of the original and outstanding lien against it"—the very thing it unanimously determined before in cause No. 8743, 287 S. W. at page 289, they could not do.

In No. 8743, after originally stating the controlling issue involved to be "whether or not the plaintiffs below, in bringing their

suit, were at the time in position as against the appealing defendants to assert a superior title to the land by virtue of being the holders of the original and outstanding vendor's lien against it," this court thus in substance on rehearing determined that sole question adversely to them in so far as concerned appellant Brooks:

"After mature reconsideration, * * * we have become convinced of error in the original disposition through our failure to sustain appellant Brooks' plea of estoppel. * * *

"But this defense of estoppel was properly interposed below both by pleading and proof, was broader than this, and amounted, in substance, to the claim that the appellees, by accepting Brooks' money on September 19, 1921, and thereafter, in furtherance of the understanding then and thereby reached, on 21st day of September, 1921, delivering and assigning to him the $4,500 note, and the lien securing it, in the circumstances shown to have attended the transaction as a whole, estopped themselves from thereafter asserting as against him any right to recover the land as an incident to ownership of the original vendor's lien indebtedness; in other words, that they thereby in effect agreed with him that henceforth he and they would mutually sustain toward the lands the strict relation of lienholders or mortgagees only, with distinct specification that their indebtedness, so shorn of what might otherwise carry with it the rescission and recovery of the title right, would be first in time and his second.

"That position is now sustained. * * *

"From the uncontroverted proof it now seems to us to conclusively appear that the language and conduct of the appellees with reference to the relative status of the two liens they held led the appellant to buy the second one in reliance upon an understanding that it would be subordinate to theirs only in respect to priority of payment, and that, knowing then that he so acted, they should not now be permitted to disappoint his expectation. * * *

"This judgment shall in nowise affect the O'Connors' right as against Brooks to foreclose their prior lien."

The Supreme Court refused a writ of error in that cause, thereby approving the quoted holding. That final action forever took from the appellees here any right or title of any sort in this 160 acres as against this appellant, and reduced them for all purposes to the level plain of mere lienholders along with him, save only that they should be permitted to eat as such at the first table, while he must wait for the second. It is therefore wholly immaterial as to what title they may have held to the land as against others—as affected him they neither then were, nor, so long as such decree remained

in force, could thereafter become, other than prior lienholders only, the full rights of a holder of the second lien remaining unimpaired in the appellant.

In these circumstances, just how this court may now, by its present majority ipse dixit concerning the full court's last-quoted former determination that it "did not mean, and cannot be reasonably construed as meaning, to limit the right of plaintiffs to such proceedings (foreclosure) in a strictly technical sense," denude that decision of any of its force, does not readily occur, since it has long since become res adjudicata of that question, hence the law of the present case upon it; neither did that opinion leave the litigants here in the same position as if Brooks had not been made a party to that cause, for the reason that it affirmatively decreed the estoppel against the appellees in his favor, or, to repeat its exact language, "they thereby in effect agreed with him that henceforth he and they would mutually sustain toward the lands the strict relation of lienholders or mortgagees only," etc.

As the majority opinion recites, the former judgment also divested all title to the land out of the Bootys and invested it in the O'Connors.

So that, with the Bootys finally eliminated and the relative status toward this 160 acres of the O'Connors and Brooks thus authoritatively fixed as being only that of first and second lienholders, respectively, the O'Connors sued Brooks in this proceeding upon the theory that his so-established secondary lien—he still claiming under it, and it never having been released of record—constituted a cloud upon their title to the land, which they were entitled to have removed and their own title decreed and quieted in either of two contingencies: (1) Should he fail by his answer herein to show or allege that he then had any legal or equitable right in or lien upon the land; (2) should it be determined on final trial upon the facts that he really had no such right or lien. There was a further contingent prayer for a foreclosure of their own declared-upon first lien, in event it developed that he did have a lien for any amount justly due him; but as the judgment disposed of the cause on the first theory, it need not be further referred to.

Their petition will be searched in vain for any averments, either that Brooks in fact had no right in or lien upon the land, or that any such equities existed in their favor as that the value of the security was not sufficient to satisfy on sale thereof both classes of liens; on the contrary, they grounded their action solely upon the view that they could extinguish the appellant's claimed lien as a cloud upon their title to the land, which they charged consisted of a superior or paramount prior lien thereon, either in case he

failed on their invitation to come in and show just what amount was still due him thereon, or if the facts developed that nothing was, their allegations toward that objective simply amounting, on the whole, (1) to setting up all the facts conclusively showing, if not indeed expressly admitting, that he did have the subordinate lien he asserted, (2) to stating that they did not know whether any part of the $4,500 note it secured had ever been paid or not, and (3) to asserting that his unreleased lien constituted a cloud upon their title.

As the excerpts quoted from its judgment in the majority opinion show, the trial court adopted this theory of the appellees as to their rights, and, upon appellant's mere refusal to take up the gage they so laid down for him and answer their averments on the facts by pleading or proof, without receiving any evidence either as to whether or not his lien was still outstanding unimpaired, or as to the existence or not of any fact that might otherwise render its recognition inequitable as affected appellees, not only adjudged the latter to be the legal owners of the land and as such entitled to have their title to it freed from appellant's lien as a cloud thereon, but further decreed that his deed of trust evidencing it be canceled and held for naught; this in spite of the admitted fact that both his $4,500 note and this lien securing it had, in consideration of full value therefor paid by him, emanated from themselves.

In my opinion, this judgment was without either pleading or evidence to support it, and therefore cannot properly stand. In the first place, the facts averred did not comprehend a cloud upon the only kind of title the appellees alleged they had as against him, consequently appellant's general demurrer to their petition should have been sustained. A cloud on title has been acceptably defined to be: "An outstanding claim or incumbrance which, if valid, would affect or impair the title of the owner of a particular estate, and which apparently and on its face has that effect, but which can be shown by extrinsic proof to be invalid or inapplicable to the estate in question." Black's Dictionary of Law, p. 214; 32 Cyc. p. 1314 et seq., and authorities cited.

As before shown, none of these essentials were here charged. The particular estate they said they owned as against appellant was only a prior lien to his upon the same land, and it was neither alleged that his asserted subordinate one, if valid, would in any way impair theirs, nor that on its face it even had that semblance, nor that it could be shown by extrinsic evidence to be invalid or inapplicable as against their own—rather was the contrary explicitly pleaded. They not only made parts of their pleading the deed of trust appellant held and the assignment from themselves to him of the lien

therein carried, each of which instruments recited upon the face thereof that his lien existed but was in every way secondary and inferior to theirs, but also a full copy of this court's former opinion in No. 8743, which recited all these facts, and evidenced as well this court's holding that they had nothing but a prior lien as against him and in consequence no other right than to foreclose it in a court of competent jurisdiction.

Obviously, therefore, the mere contemporaneous coexistence with their own superior one of a second-class lien in him would not in law cast a cloud upon the only right in or title to the land they thus had. 7 Cyc. 255, 256, and authorities cited in notes 34 to 47, inclusive; Day Land & Cattle Co. v. State, 68 Tex. 536, 537, 4 S. W. 865; Morton v. Morris, 27 Tex. Civ. App. 266, 66 S. W. 94.

If the pleadings, however, could be construed as sufficiently averring the existence of a cloud, the supporting evidence, under the authorities last cited, was plainly lacking. For instance, it was agreed between the parties in open court upon the trial—to be considered, however, only as bearing upon appellant's plea to the jurisdiction of the court —that he was then the owner of the $4,500 lien note, none of which had ever been paid, although it had been presented to and allowed as a claim against the estate of E. F. Booty by the probate court of Jackson county within a year after the granting of administration thereon; further, that appellant had just testified that he neither had nor asserted any other interest in or claim against the 160 acres involved than that of a junior lienholder under the $4,500 note and supporting lien he had so acquired from the appellees, which lien he had always admitted to be wholly subordinate and secondary to their first lien on the land, and that there had never been any issue between him and them as to the admitted priority of their lien over his.

The appellees themselves, however, for the purpose of showing the claimed cloud on this title, as well as for all others, offered in evidence as their fifth and sixth written instruments the $4,500 deed of trust carrying appellant's lien and the transfer of that lien from O'Connor, executor, to him, both of which documents on the face thereof recited that Brooks owned the note and lien and that it was secondary, subordinate, and inferior to the prior and first lien retained on the land by the O'Connors.

But as previously stated, they neither controverted the matters of fact appearing in the above-given and so restricted agreement, nor did they go further and prove any fact either tending to impair the then outstanding force of appellant's debt and lien or giving rise to a countervailing equity against it in themselves; in short, they did nothing further, except to show that they then held the first lien on the land, and then relied upon

that and the refusal of appellant to further plead for the judgment the trial court accorded them.

It seems at least novel to me that a litigant can thus be penalized for his refusal to aid his antagonist in making a case against him, and for preferring to stand at arm's length upon his own rights. The appellees were not in the position of interpleaders—that is, of those holding but themselves owning no interest in property that is adversely claimed by others, whom they might compel to come in and litigate the title to between themselves, thereby relieving the holders of liability— but they sued and recovered against appellant alone as the holder of a claim that improperly clouded the title of their own; as the proponents of that declared upon cause of action, it was not only clearly incumbent on them to sufficiently allege but likewise prove it as well; they failed upon both features. 32 Cyc. p. 1369 (111), and authorities cited in footnotes, 7, 8, and 9.

Under the particular facts involved, the title to this land not only having long since passed out of the Bootys, but the legal status toward it of the parties here having been definitely fixed by the former judgment of this court, I have agreed with my associates that the trial court had jurisdiction of the controversy, at any rate in so far as it was an action to foreclose the appellees' lien; the same holding as to jurisdiction was also made by this court in a third suit between these parties, Booty et al. v. O'Connor et al. (No. 9175) 13 S.W.(2d) 220, by opinion filed here on November 22, 1928.

Under the view here taken, the trial court's judgment should be reversed and the cause remanded; this protest against its affirmance is earnestly entered.

### On Motion for Rehearing.

PLEASANTS, C. J. The dissenting opinion in this case, like all of the writings of its author, is fluent and entertaining; but it falls far short of beng convincing to the majority of the court. If the rules of law pertaining to the main question involved in the suit have by the deliverance of this court been placed in the ludicrous state depicted in the dissenting opinion, the responsibility therefor does not wholly nor primarily rest upon the majority of the court.

As stated in our main opinion in this case, the majority of the court granted the motion for rehearing and reversed the judgment in the Booty Case, 287 S. W. 289, solely upon the ground that appellees were estopped to acquire the Booty title by assertion of their superior vendor's lien title, and by making appellant defendant in their suit to recover the land obtained judgment against him for the land freed from his second lien. We did not hold, and did not construe the opinion on rehearing as holding, that appellees could not recover the title of the Bootys, as was done in that case with the approval of all members of this court, who agreed that judgment of the lower court on that issue should be affirmed.

The acquisition of the Booty title by appellees placed full title to the land in them subject only to appellant's right to assert his second lien and to subject any surplus in the value of the property after the satisfaction of appellees' first lien to the discharge of appellant's second lien. If the opinion on rehearing goes further than this, it has, in our opinion, no support in law or reason. The right to subject the property to the satisfaction of his second lien after the discharge of appellees' first lien was the only right appellant obtained in the property by the transfer to him by appellees of the second lien notes, and we cannot understand how this right could become enlarged by the acquisition by appellees of the Booty title.

We have all agreed that appellant's plea to the jurisdiction of the court was properly overruled. If this holding is correct, and none of us have any doubt of its soundness, it seems to the majority that appellees offered appellant every opportunity to assert and enforce any right he had in the property in controversy, and that appellant's refusal to assert his rights in the only court having jurisdiction to enforce them entitled appellees to recover their land freed from the cloud cast upon their title by appellant's apparent equity therein.

This conclusion impels the majority of the court to overrule the motion for rehearing.